**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

**Ryea Bruske**
**Tamsyn Bruske**

**On behalf of Themselves and**
**all others similarly situated**

      **Plaintiffs**

      **v.**                                **Case No. 19-CV-851**

**Capitol Watertown Sprechers, LLC et al.**

      **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS' MOTION FOR**
**CONDITIONAL CERTIFICATION**

## I.      Introduction.

Plaintiffs are appropriately relying on the Defendants' discovery admissions, rather than employee declarations, to establish other class members are similarly situated to the Plaintiffs with respect to the FLSA minimum wage violation. For Watertown employees, the Defendants' discovery responses show that all tipped employees received a cash wage below the minimum wage with the exception of Ryea Bruske during a portion of time when she worked as a bartender; and that the same notices of the tip credit were given to all employees. For tipped employees of other Sprecher's Restaurant and Pub ("Sprecher's Restaurant) locations, that they received cash wages below the minimum wage is established by handbook provisions informing them that their tips would be applied to a portion of the minimum wage; while the accountant, payroll company, and Operations Managers' involvement in designing and informing local restaurant management of what notices of the tip credit to provide makes a sufficient showing that same notices of the tip

credit were given at all Sprecher's Restaurant locations.  There is no evidence any Sprecher's tipped employees other than the two named plaintiffs are aware of this lawsuit, so that the Plaintiffs' choice to use the Defendants' admissions rather than additional employee declarations to support conditional certification does not demonstrate a lack of interest in the lawsuit.

Notices of the lawsuit should be given to current and former tipped employees at other Sprecher's Restaurant locations when Plaintiffs have made an adequate showing that the locations' centralized operation caused their FLSA injury, so that the locations should be treated as a single entity; and because Plaintiffs have made an adequate showing that Susan Getgen, by virtue of her control over what notices of the tip credit to give at each location, employed all tipped employees at all locations.  Notices should also be given to current and former tipped Fast Lanes employees because Getgen was their employer as well.

The Court should therefore authorize notice to all current and former tipped employees for all Sprecher's Restaurant locations and Fast Lanes.  For the reasons stated below the Court should reject all of the Defendants' proposed modifications to the class notice and opt-in form with the exception of the proposed change to the title of the opt-in form.

## II.    Argument.

1.    <u>Tipped Employees at all Sprecher's Restaurants are similarly situated on the claim that the Defendants Failed to Provide to Them Notices of the Tip Credit required by the FLSA.</u>

    a.    <u>Plaintiffs Have Made the Required Modest Showing that Members of the Class are Similarly Situated</u>.

Plaintiffs largely rely on the Defendants' admissions rather than additional employee declarations to demonstrate they are similarly situated to tipped employees at all Sprecher's Restaurant locations. Evidence obtained by the Plaintiffs during discovery clearly demonstrate other Watertown tipped employees are similarly situated to Ryea Bruske:  No tipped employee

other than Bruske ever received more than $7 per hour for their tipped work, while Bruske experienced the same violations in that she was paid both $7 and $8 per hour in cash for her work as a bartender. (Docket #42-1) The Defendants admitted there were no differences between notices of the tip credit provided to the Plaintiffs, and notices of the tip credit provided to all tipped watertown employees. (Docket #42-2, answer to interrogatory #5) All watertown employees are therefore similarly situated in that they received cash wages below the minimum wage, and that they received the same notices of the tip credit that the Plaintiffs claim fell short of the minimum required by the FLSA when they were never told either (a) their employer would make up the difference if their wages plus tips fell short of the minimum wage; or (b) whether the amount of the tip credit equaled to the difference between their cash wage and $7.25 per hour, or a larger amount to account for their work related expenses. Because the Plaintiffs' interrogatory number five was phrased to cover all tipped employees rather than only servers and bartenders, the Defendants' argument that the proposed class should exclude other tipped employees such as bussers and foodrunners is baseless.

Plaintiffs have also made the requisite modest showing that employees at other Sprecher's Restaurants received sub-minimum wages and deficient notices of the tip credit. The Defendants' handbook applicable to all Sprecher's Restaurants clearly state that the Defendants applied tips to a portion of the minimum wage owed to their tipped employees, so that the tipped employee received cash wages that fell below the minimum wage. (Docket #41-1)

Plaintiffs have similarly adequately demonstrated, for conditional certification, that same notices of the tip credit were given at other Sprecher's Restaurant locations. The Defendants' accountant and the payroll companies he hired were responsible for determining what notices of

the tip credit to give at each restaurant, (Docket #40, pg. 12-13)[1] Susan Getgen, the operations manager for each of the restaurants, testified that she believed no decisions need to be made on what notices to give to tipped employees about the tip credit because what notice to provide (presumably as decided by the accountant and payroll company) is an industry standard that is just what happens regardless of which restaurant one works at.  (Docket #40, pg. 7; docket #39, pg. 67-68)  Getgen told the Watertown general managers what notices of the tip credit to provide to employees.  (Docket #39, pg. 55-56) That Getgen believed the same notices of the tip credit should be given at each restaurant, and that Getgen would follow through on her beliefs by instructing the Watertown restaurant on what notices of the tip credit to provide, makes it more likely than not that Getgen had the same involvement in dictating what notices of the tip credit to give at other Sprecher's Restaurant locations. Defendants have not denied Getgen's involvement in communicating what notices of the tip credit to provide to other restaurants, despite Getgen's availability to it to provide a declaration.  Other methods Defendants used to explain the tip credit to their employees, specifically the employee handbook and minimum wage posters, are indisputably uniform.  (Docket #39, pg. 51-52, 65)

In *Bessy v. Per Mar Security & Research Corp.*, 2018 WL 1583297 *3 (W.D. WI. 2018), the Court found oversight by the same corporate payroll department over accurate computation and processing of payroll permitted the reasonable inference that the same method for computing overtime pay was implemented nationwide.  Similarly, centralized decision making over what notices of the tip credit to give permits a reasonable inference that the same notices of the tip credit

---

[1] Capitol Watertown Sprecher's  deposition testimony does not contradict Lederer's deposition testimony:  The accountant did not advise Watertown Sprechers about what notices of the tip credit to provide because the instruction was made by Getgen as the conduit, rather than by the accountant directly.  (Docket #39, pg. 69) Moreover, nothing in Watertown's testimony negates the portion of Lederer's claim that the payroll companies made centralized decisions on what notices of the tip credit to provide.

were provided at all Sprecher's Restaurant locations.  Defendants have not argued to distinguish or limit *Bessy* in anyway.  Plaintiffs have therefore made an adequate showing that other employees are similarly situated even if the appropriate standard is preponderance of the evidence.  *Lopez v. Esparza v. Holder*, 770 F. 3d 606, 608-609 (7th Cir. 2014) (Preponderance standard satisfied when Defendant did nothing but point out the weakness of the Plaintiffs' evidence, as some evidence would seem to preponderate over no evidence).

Applying the modest conditional certification standard to this issue is especially appropriate when the Plaintiffs were prevented by the Defendants from conducting any direct discovery on what notices of the tip credit were given at other Sprecher's Restaurants.  In response to request for documents that support the Defendants' claim that Capitol Watertown Sprechers LLC did not operate the other Sprecher's Restaurant locations, Defendants produced a deliberately misleading organizational chart that omitted the names of the LLCs that operated the other locations.  (Docket #42-2, response to document request #2; docket #34-2; docket #40, pg. 18-19) As a result, Plaintiffs were unable to name in the First Amended Complaint, and include in their Rule 30(b)(6) notice, the LLCs that nominally operated the other Sprecher's Restaurant locations; thus allowing Getgen to claim she only represented Capitol Watertown Sprechers at the Rule 30(b)(6) deposition.  The Court should give the Plaintiffs an appropriate opportunity to conduct discovery on whether the same notices of the tip credit were in fact given to employees at other Sprecher's Restaurant locations before deciding at the decertification stage whether a class including the other Sprecher's Restaurant locations is appropriate.

The availability of common evidence to show class members received the same corporate designed notices of the tip credit makes this case different from *Robles v. Brunswick Corp.*, 2020 WL 109776 *7 (E.D. WI. 2020), in which the motion for conditional certification failed because

there was no common proof for supervisor knowledge that employees performed work after they punched in, and before they began to be paid.

> b.  Declarations from Other Employees is not the Only Permissible Proof at the Conditional Certification Stage that Class Members are Similarly Situated.

Contacting other class members without the Court's authorization to obtain their declarations is not the only permissible way to obtain proof in support of conditional certification. Rather, evidence supporting conditional certification can take the form of deposition testimony or other documents.  *Krupp v. Impact Acquisition, Inc*., 2016 WL 7190562 *5 (E.D. WI. 2016). As Judge Conley held in *Holmes v. Sid's Sealants, LLC*, 2017 WL 5740684 *3 (W.D. WI. 2017), disputed statements by the Defendant's sole member can be relied upon to demonstrate the Defendant applied uniform policies to its employees, so that additional employee declarations are not required to support a motion for conditional certification.   Consistent with these Court's teachings, Plaintiffs are relying on the Defendants' discovery admissions to demonstrate they are similarly situated to tipped employees at other Sprecher's Restaurants locations, in that they were paid a cash wage below the minimum wage of $7.25 per hour though they did not receive explanations of the tip credit required by the FLSA.

Cases cited by the Defendants, two of which are from a single magistrate judge in the Eastern District of Wisconsin, denied conditional certification because of failure of proof rather than the failure to affirmatively solicit and obtain declarations from other employees.  See for example *Malicki*, 2019 WL 699963 *4 (E.D. WI. 2019) (Employee failed to present any proof that the employer rounded punch times; while Plaintiff does not claim he saw other employees work through breaks without pay); *Armstrong v. Welcert Realtors*, 2006 WL 1455781 *2 (D. N.J. 2006) (One page declaration from Named Plaintiff by itself insufficient to show other employees are

similarly situated).  The *Hatton* case similarly involved a failure of proof that other class members were similarly harmed, rather than necessarily that no declarations from other employees were presented.  *Hatton* indeed does not reference any evidence obtained from the Defendants to support conditional certification, as the Plaintiffs have obtained in this case.

The Defendants' citation to *Payne v. Pauley*, 357 F. 3d 767, 772 (7th Cir. 2003) wholly misses the mark.  In that case, the Seventh Circuit held that evidence opposing summary judgment must be based on personal knowledge so that it must be grounded in personal observations or other firsthand experience.  When the Plaintiffs are relying on the Defendants' admissions to establish other employees are similarly situated, the appropriate question is whether the Defendants had the requisite personal knowledge to make the admissions, rather than what the Plaintiffs saw and experienced with respect to other employees.  Getgen and Lederer are plainly testifying based on their firsthand knowledge and experience when testifying on the accountant and payroll company's involvement in deciding what notices of the tip credit to provide, that Getgen was the operations manager of all Sprecher's Restaurants, that Getgen believed there was a standardized notice that should be given to all tipped employees, that Getgen was involved in determining and giving instructions on what notices of the tip credit to give to the Watertown employees, and that the same compensation section of employee handbooks and minimum wage posters were used at all restaurants.  The Plaintiffs' evidence fully satisfies the *Pauley* standard for the quality of evidence that must be presented to oppose a motion for *summary judgment*.

> c.     There is no Basis to Deny Conditional Certification on Ground of Lack of Interest.

Because the Plaintiffs believe the Defendants' admissions adequately support conditional certification, they have not submitted declarations from non-Plaintiffs to support the motion.  The Plaintiffs' choice of what evidence to submit does not demonstrate lack of interest in the lawsuit.

Similarly, that no one else has opted into the lawsuit may show no one else knows about the lawsuit, rather than that other employees when informed of the lawsuit would not opt in. This Court has stated that it was a not insignificant mistake for Plaintiffs' counsel to mail notices to potential class members and invite them to join the lawsuit without the Court's authorization. *Spoerle v. Kraft Foods Global*, 253 F.R.D. 434, 442 (W.D. WI. 2008). Consistent with the Court's teaching, Plaintiffs have waited for the Court authorized notice process to give notice to the class.

Hadley provides no support for the Defendants' argument. The same judge that issued Hadley subsequently explained that the problem with the proposed collective action in *Hadley* was the absence of evidence showing that the Defendants' pay policies applied to all members of the class, and that class members had already expressed a desire to not participate in the lawsuit, rather than only that no one else had opted in. *Laughlin v. Jim Fischer, Inc*., (docket #39, 9/19/17, pg. 13-14 copy attached). Moreover, whereas in *Hadley* the stake for individual class members was small, the stakes are much larger in this case. For example, if the Defendants' notices of the tip credit were inadequate under the FLSA, they would owe $9.84 per hour ($7.25 minimum wage - $2.33 per hour cash wage paid, then doubled to account for liquidated damages) for each and every hour worked by their servers.

> 2.    Plaintiffs Have Adequately Shown for Conditional Certification Purposes that the LLCs Operating Each and Every Sprecher's Restaurant Formed a Single Employer.

> a.    The Seventh Circuit is Likely to Recognize Joint Liability for Corporations that Form a Single Entity.

*Papa v. Katy Industries, Inc*., 166 F. 3d 937, 940-941 (7th Cir. 1999), along with how the Seventh Circuit has interpreted and applied *Papa*, suggests the Seventh Circuit is likely to recognize single employer FLSA liability. In *Papa*, the question before the Court was whether for the purpose of antidiscrimination laws the Plaintiff's employer was the corporate entity that

nominally employed him or the entire consolidated group of corporate entities. *See* 166 F. 3d at 939. The Seventh Circuit held the Plaintiff's employer was the entire consolidated group of corporate entities if it was possible to pierce the corporate veil between the entities, if the corporations though nominally separate were separated for the purpose of avoiding liability, or if the consolidated entities rather than the individual employing entity was responsible for directing the complained of policy or practice. *See* 166 F. 3d at 940-941.

In *Moldenhauser v. Tazewell-Pekin Consol. Comm. Ctr.*, 536 F. 3d 640 (7th Cir. 2008), the Seventh Circuit addressed related employer liability under the FMLA. After finding the two alleged employing entities were not joint employers, the Seventh Circuit then separately cited Papa and considered whether the two entities were separated to avoid liability because it would not tolerate an employer dividing itself into smaller entities to avoid FMLA liability. *See* 536 F. 3d at 645-646. As the *Moldenhauser* Court noted, joint regulations under the FMLA and FLSA mirror each other. See 536 F. 3d at 644. If the *Papa* test is applicable to determine whether the Court should regard nominally separate entities as a single entity for FMLA liability, then an entity should not be allowed to rely on separate incorporation to deliberately avoid its own FLSA liability either.

Here, the entities that operated the different Sprecher's Restaurants, though nominally separate entities, viewed themselves as a single unified operation. When asked whether the entities would sue each other to recover loans that they nominally made to each other, Keven Lederer's answer was: "I don't think you sue yourself too often, do you?" (Docket #40, pg. 39:4-5) That Defendant entities separately incorporated though they viewed themselves as a single entity operating all the Sprecher's Restaurants suggests separate incorporation was for the purpose of limiting each restaurant's liability. As explained by the Plaintiffs' reply brief in support of their

motion for leave to amend citing *Quad Graphics Inc. v. Fass*, 548 F. Supp. 966, 969 (E.D. WI. 1982), that the Defendant entities held themselves out to the public and to their employees as locations of Sprecher's Restaurant and Pub, but intended to rely on loans with no definite repayment terms and that they never intended to enforce against each other to increase Capitol Watertown Sprecher's liabilities and thus make it less collectable for creditors such as the Bruskes is precisely the type of injustice that warrants piercing the corporate veil.  (Docket #43, pg. 5-6) The allegations of the Second Amended Complaint are supported by Lederer's deposition, who testified that the purported loans were regarded as debt owed by each of the LLCs though there was no definite term of repayment for, and though no lawsuits would have been filed against any of the LLCs to seek to recover the purported loans.  (Docket #40, pg. 22, 38-39) Defendants have not attempted to distinguish *Fass* in anyway.  Finally, as discussed above a common set of actors employed by all of the LLCs, including the accountant, the payroll company, and Susan Getgen, were responsible for designing and implementing a uniform policy of paying sub-minimum wages to tipped employees despite their failure to provide notices of the tip credit required by the FLSA. Applying the *Papa* test, and with the benefit of further discovery, Plaintiffs can make a strong showing that they were employed by a single entity that operated all of the Sprecher's Restaurants, though that entity chose to incorporate each restaurant separately.

        b.      <u>Determining Whether the LLCs Operating the Sprechers. Restaurants Constituted a Single Entity is Premature at the Conditional Certification Stage</u>.

The Court should decline the Defendants' invitation to decide, at the conditional certification stage, whether the LLCs that operated the Sprecher's restaurants in fact formed a single entity.  *Holmes v. Sid's Sealants, LLC*, 2017 WL 5749684 *3 (W.D. WI. 2017) (Premature to determine employer status because conditional certification is not the time to examine the merits

of the Plaintiff's case); *Morgan v. Northern Concrete Construction, Inc.*, 2017 WL 6622547 *3-4 (E.D. WI. 2017) (Conditionally certify class while stating Northern Concrete was the Plaintiffs' employer was a common question to ultimate liability) Defendants have not pointed to any differences between the operations of Sprecher's restaurants so that some but not all of the restaurants formed a single employer.  The question of whether the Sprecher's Restaurants formed a single employer is therefore a common question appropriate for collective treatment. Even under the more stringent standard for Rule 23 class certification the existence of a dispositive common question, not that it should be answered in the Plaintiffs' favor, is the determinative consideration for whether a class should be certified. *Amgen Inc. v. Connecticut Retirement Plan*, 568 U.S. 455, 466 (2013).   In this case, determining whether the Defendant LLCs formed a single employer is premature at the conditional certification stage, in particular when Plaintiffs have not had an opportunity to conduct first hand discovery against the LLCs that operated the other Sprechers' Restaurants, in that they are still awaiting the Court's leave to add them as defendants.

   c. <u>Plaintiffs have Accurately Cited from the Record To Make a Modest Showing that the LLC Defendants Operating the Sprecher's Restaurants Formed a Single Entity</u>.

  Even were the Court inclined to consider at the conditional certification stage whether the LLCs formed a single employer, the Defendants cannot successfully question the Plaintiffs' evidence by cherry picking from the record, so that the Plaintiffs have adequately shown the LLCs operating the Sprecher's Restaurants operated as a single entity:

  First, Lederer admitted in his deposition that the same accountant and same payroll company was used for payroll for each Sprecher's Restaurant.  (Docket #40, pg. 8-9) That Watertown payroll was reviewed by the accountant and provided to the payroll company, and that other restaurants employed the same accountant and payroll company, makes it more likely than

not that the same procedure was also used to review and forward payrolls for the other Sprecher's Restaurants.  Even under the preponderance of evidence standard, never mind the lower evidence that only requires the Plaintiff to present some evidence that he is similarly situated to other class members at the conditional certification stage, some evidence preponderates over no evidence. *Holder*, 770 F. 3d at 608-609 (7th Cir. 2014).

Second, the record clearly establishes Getgen's involvement in marketing for all Sprecher's Restaurants.  Getgen would ask Bruske to make drinks already on Watertown's menu, so that she would use the pictures for advertisements for other restaurants. (Docket #41, ¶6)  Getgen's explanation to an employee for why she was asking the employee to make a drink falls within the scope of Getgen's employment as Operations Manager, so that the statement is an admissible party opponent admission against all Defendant LLCs for whom Getgen served as Operations Manager. *Berndt v. Cleary Bldg corp*., 2013 WL 3287599 *5 (W.D. WI. 2013) (Statement by regional managers in agent capacity constituted party opponent admissions); *Laugenbach v. Wal-Mart Stores Inc.*, 988 f. Supp. 2d. 1004, 1020 (E.D. WI. 2013) (Statement by individual store manager was party opponent admission).  The Plaintiffs' evidence for Getgen's involvement in marking for other Sprecher's Restaurants therefore consist of appropriate admissions rather than speculation.

Third, the record clearly establishes there was no enforceable obligation to repay any of the loans that either the Defendant LLCs made to each other, or that the Defendants' owners made to the LLCs.  Lederer admits there were no repayment terms that established how much and how quickly the loans must be repaid.  (Docket #40, pg. 38:15-23) The LLCs would not sue each other to seek repayment of the loans because "I don't think you sue yourself too often, do you?". (Id. Pg. 39:4-5) That the Defendants' owners regarded all of the LLCs as part of themselves makes clear that the LLCs did not deal with each other on an arms-length basis.

Fourth, the record clearly establishes Getgen's involvement in determining food and beverage selections.  Getgen would offer guidance on what dishes and drinks to offer, as well as how the offerings should be priced. (Docket #39, pg. 95:18-22)  The management at the Watertown restaurant thus could not decide to stop selling Sprecher's  beer by themselves. (Id. Pg. 95:4-8)  If there was disagreement between Getgen and local restaurant management, Getgen's opinion would control.  (Id. 96:4-10)  That Getgen served as the operations manager for all Sprecher's Restaurants, that Getgen had final say in food and beverage selections for the Watertown restaurant, and that the Defendants failed to produce any evidence showing Getgen had a lower level of authority at other restaurants makes it more likely than not that she also had final say in food and beverage selections for other Sprecher's Restaurants.

Fifth, the statements made by local restaurant management that there is a corporate policy that one must be a server before becoming a bartender, made while acting as the Defendants' agent in hiring new employees, constitute party opponent admissions. *Bernt*, 2013 WL 3287599 *5; *Laugenbach*, 988 F. Supp. 2d 1020.  The Defendants have not responded with any evidence showing the policy that one must be hired as a server did not apply at other restaurants, so that the some evidence presented by the Plaintiffs outweigh no evidence presented by Defendants.  *Lopez-Esparza*, 770 F. 3d at 608-609.

3.  Plaintiffs Have Adequately Shown that Getgen Employed all of Sprecher's
    Tipped Employees.

The Defendants have not disputed the Plaintiffs' legal framework for why Getgen was the employer for all tipped employees at all Sprecher's Restaurants:  A supervisor is an employer under the FLSA if she had control over the practices that caused the Plaintiffs' injury, even if she did not routinely carry out other human resources functions with respect to the Plaintiffs.  *Luder v. Endicott*, 23 F. 3d 1020, 1022 (7th Cir. 2001).  Getgen was the Plaintiffs' employer if she

exercised control over what notices of the tip credit to give to Sprecher's tipped employees, the specific policy that caused the alleged underpayment of minimum wage compensation to the Plaintiffs.

Plaintiffs have shown even under the stricter preponderance of the evidence standard that Getgen was involved in deciding and/or implementing what notices of the tip credit to give to employees at other Sprecher's Restaurants:  She believed the notices were an industry standard so that no decision needed to be made on what notices to give, she was involved in telling managers at the Watertown restaurant what notices of the tip credit to provide, and she has never denied to the Court that she had similar involvement in dictating what notices of the tip credit other Sprecher's Restaurants provided to their employees.  Even the higher preponderance standard is satisfied when the Plaintiffs have presented evidence to permit the reasonable inference that Getgen was involved in deciding what notices of the tip credit to give to other restaurants; while the Defendants have offered nothing in response.  *Lopez-Esparza*, 770 F. 3d at 608-609; *Bessy*, 2018 WL 1583297 *3 (corporate oversight over payroll supported a sufficient inference at the conditional certification stage that overtime computation policies were implemented on a nationwide basis).

> 4.    <u>Plaintiffs have Shown Getgen was the FLSA Employer of Similarly Harmed Fast Lanes Employees.</u>

Just like for the Sprecher employees, the Defendants have only criticized the Plaintiffs' evidence, rather than presented the Court with any evidence showing that a. it did not pay a wage below $7.25 per hour to tipped employees at Fast Lanes; b. notices of the tip credit at Fast Lanes was meaningfully different from notices of the tip credit given at Sprecher's Restaurants; or c. because there was an additional owner at Fast Lanes Getgen had less involvement in what notices of the tip credit to provide to Fast Lanes employees.  The Defendants' strategy is fatal to their

opposition to conditional certification when there is evidence showing Getgen similarly harmed Fast Lanes employees as she did Sprecher's tipped employees by overseeing the implementation of the notice of tip credit policy that violated the FLSA.

First, there is no dispute the same four owners that owned the Sprecher's restaurants were also investors at Fast Lanes; and that Getgen served as the operations manager for both the Sprecher's Restaurants and for Fast Lanes.  It is more likely than not that owners and managers who believe they are entitled to take a tip credit would claim a tip credit and lower their labor costs at each restaurant they operate, and who does claim a tip credit at every other restaurant they operate, would also claim a tip credit against the minimum wage at Fast Lanes.  Second, Getgen was both a part-owner and the operations manager of Fast Lanes.  Getgen's role as a part owner at Fast Lanes, along with her belief that notices of the tip credit given at Sprechers was industry standard and should be given, supports a reasonable inference that same notices of the tip credit were also given at Fast Lanes.  Defendants have offered no evidence to rebut these reasonable inferences from the record.  Plaintiffs have made a modest showing that Getgen was the employer of the Fast Lanes' tipped employees because she was responsible for the tip notice policy that caused their injuries.

Plaintiffs have chosen to include the Fast Lanes' employees in the proposed collective action on the sole basis that the individual defendants jointly employed the Sprecher's  and Fast Lanes employees, rather than because Fast Lanes formed a single employer with Sprecher's  Pub and Restaurants:  The presence of additional owners at Fast Lanes may suggest different ownership and control for Fast Lanes for Fast Lanes and the Sprecher's Restaurants, but does not negate Getgen's likely role in setting what notices of the tip credit to provide at all of the restaurants. There is no basis for refusing to include the Fast Lanes' tipped employees in the collective action

just because the Plaintiffs have chosen to not pursue the separate legal theory that Fast Lanes formed a single employer along with the Sprecher's Restaurants.

     5.     There is No Basis to Modify the Opt-In Form and Collective Action Notice.

Plaintiffs do not object to the proposed modification to the title of the opt-in notice. The language in the proposed opt-in notice stating: "to recover overtime pay and other available damages under the Fair Labor Standards Act" is important so that class members understand what claims they are opting into. The language of the notice informs class members that they are joining a lawsuit to recover overtime pay and other available damages, thus making clear no determination of liability has been made by the Court. That the Court has not made a determination on liability is further reinforced by the final sentence of the Purpose of Notice Section of the proposed class notice.

With respect to the proposed class notice, first there is no basis to rewrite the notice based on a two years rather than a three years statute of limitations. The conditional certification stage is premature for determining the merits of the parties' dispute, such as whether the Defendants' violation of the FLSA (which the Court has not yet found and defined) were willful, in particular when no discovery has been conducted on why the Defendants adopted the tip notice policies that they adopted. *Holmes*, 2017 WL 5749684 *3 (Determining merits of dispute premature at conditional certification stage). Courts therefore routinely approve giving notice based on a three years statute of limitations. *Goplin v. WeConnect, Inc*., 2018 WL 6421064 *5 (W.D. WI. 2018); *Singleton v. B & H Transp. Inc*., 2014 WL 15272983 *4 (E.D. WI. 2013).

Second, because the Plaintiffs had to propose their notice form at a time when their motion for leave to amend their complaint was not decided by the Court, the notice was drafted under the assumption the motion would be granted by the Court. Were the Court to deny the motion in

whole or in part, Plaintiffs agree the list of defendants in the description of the lawsuit section should be modified accordingly.

Third, a collective action is alleged by the operative complaint, so that the Plaintiffs are alleging the under-payment of minimum wage and overtime pay caused by the Defendants' inadequate notices of the tip credit to their tipped employees occurred to all members of the collective action rather than just themselves.  The Plaintiffs are requesting conditional certification because there is conclusive evidence for the Watertown employees, and some evidence for employees at other Sprecher's restaurants and fast lanes, both that they received sub-minimum wages and that they received inadequate notices of the tip credit. The request is based on evidence Plaintiffs' counsel developed during discovery rather than the Plaintiffs' personal observations. The second paragraph of the Description of the Lawsuit section accurately describes what the lawsuit alleges, i.e. that "you" as a class member experienced the same minimum wage and overtime violations as the Plaintiffs.

Fourth, the description's reference to "aprons and other clothing" is justified when there is a dress code in the employee handbook, which by its plain language applies to all Sprecher's Restaurant locations. (Docket #39, pg. 70; docket #41-1) Because employees only received one shirt and one apron when they started working, it is reasonable to conclude that in order to comply with the same dress code employees at other Sprecher's Restaurants had to purchase clothing from Sprecher's as well. (Id. Pg. 72) The notice therefore reasonable explains to prospective members of the collective action that the lawsuit alleges computing the tip credit is not as simple as subtracting their cash wage from $7.25 per hour, as Sprecher's could have claimed a larger tip credit so that it would comply with the minimum wage even during workweeks when tipped employees had to pay for clothing used exclusively for work.  Sprecher's proposed modification

makes the notice an inaccurate description of the Plaintiffs' claims:  The Plaintiffs are claiming Sprecher's  failed to explain to its employees whether the amount of the tip credit was the difference between their cash wage and $7.25 per hour or a higher amount, rather than that the Defendants failed to explain to their employees that the amount of the tip credit was the difference between their cash wage and $7.25.

Fifth, the third paragraph of the Description of the Lawsuit section proposed by the Defendants is not necessary when the Purpose of Notice Section already informed class members that they are receiving the notice does not show they have a valid claim or are entitled to any recovery, as those determinations must still be made by the Court.  This section already informs the reader that the Defendants are denying liability, as there would be no need for any determinations made by the Court if the Defendants did not deny liability.  Similarly, the first two paragraphs of the Description of the Lawsuit section is careful in informing the reader that it is describing what the lawsuit alleges rather than what the court has found.

 Sixth, for the reasons stated in the Plaintiffs' briefing notices should be given to all tipped employees at Sprecher's restaurants and Fast Lanes, and a three years statute of limitation is applicable at the conditional certification stage.  Because the notice already informs class members that it is entirely their own decision to participate in this lawsuit, it has already told class members that they do not have to opt in, so that the additional language proposed by the Defendants that: "you are not required to join in this case or to file a consent form" is not necessary.

Seventh, there is no basis to modify the How and When to Join the Lawsuit section.  This Court routinely authorizes 60 days for class members to opt into the lawsuit.  *Kneipp v. Revi-Design, LLC*, 2018 WL 3998033 *5 (W.D. WI. 2018); *Bessy*, 2018 WL 1583297 *5 (W.D. WI. 2018).  Assuming the Court needs 60 days to decide the motion for conditional certification, the

parties will receive a decision on the conditional certification motion by the beginning of September of 2020, so that the 60 days to opt-in would expire by the first part of November of 2020.  The Defendants, who would already have access to time and payroll records for the opt-ins, can comfortably file their motion for decertification before the current December 4, 2020 decertification deadline. (Docket #30, 31)   Giving only 30 days from mailing is particularly inappropriate when there are hundreds of members in the class, and when many class members will be former employees for whom the Defendants do not have current addresses, so that a second mailing may be necessary before notices reach many class members.  Because late opt-ins are permissible when supported by good cause, the notice appropriately informs class members that they must timely opt in unless their justification for late mailing of the opt-in form is accepted by the Court.

Eighth, it is affirmatively misleading to, as the Defendants' propose, to inform class members that they may be asked to participate in the lawsuit by answering written questions or testifying only if they opted in.  If any current or former employees of the Defendants have information pertinent to the lawsuit, the Defendants can obtain the information through third party discovery, so that not opting into the lawsuit will not immunize current and former employees of the Defendants from discovery.  It is therefore inappropriate, coercive, and misleading to tell class members they may be forced to participate in the suit only if they opt in. The Court rejected a similar proposed modification to the class notice in *Reilly v. Century Fence Co*., 2018 WL 6573460 *9 (W.D. WI. 2018).

Finally, the Plaintiffs' proposed notice accurately informs class members that they will be eligible to share in the Bruskes' recovery should the Bruskes prevail.  This information is accurately because in order to prevail, the Bruskes will have to demonstrate that the Defendants'

uniform method for informing tipped employees of the tip credit fell short of the requirements of the FLSA, so that everyone who received a tipped minimum wage from the Defendants will be entitled to a recovery.  The Defendants' proposed additional language is affirmatively misleading: If the Bruskes' prevail, since there is no evidence additional notices of the tip credit were provided to any other employees, and since only those who received sub-minimum wages are eligible to opt in, members of the collective action will rather than may be entitled to a recovery.  The Bruskes' recovery depends on the question of law as to whether the Defendants' uniform notice of the tip credit complied with the FLSA, rather than on whether the Bruskes can prove the facts of their claims, which for the minimum wage claim can all be found in the time and payroll records maintained by the Defendants.

The Court therefore should not accept any proposed modifications to the class notice and opt-out form, with the exception of the proposed modification to the title of the opt-out form.

### III.     Conclusion.

For the above stated reasons, the Court should grant the Plaintiffs' motion for conditional certification, and authorize the mailing of notice and opt-in form in the forms proposed by the Plaintiffs with the exception of adopting the Defendants' proposal for changing the title of the opt-in form, to all current and former tipped employees who worked for any Sprecher's Restaurant or Fast Lanes on or after October 10, 2016.

Dated this 29th day of June, 2020.

/s/Yingtao Ho_____
Yingtao Ho
THE PREVIANT LAW FIRM, S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI   53203
Telephone: 414/271 4500
Fax: 414/271 6308

yh@previant.com