## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**Ryea Bruske**
**Tamsyn Bruske**

**On behalf of Themselves and**
**all others similarly situated**

    **Plaintiffs**

    **v.**                                                 **Case No. 19-CV-851**

**Capitol Watertown Sprechers, LLC et al.**

    **Defendants.**

## MEMORANDUM IN SUPPORT OF THE PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

### I.        Introduction.

Plaintiffs seek summary judgment on two sets of issues:  Defendant Capitol Watertown Sprechers ("Watertown Sprecher")' liability to the Plaintiffs under both the FLSA and Wisconsin law; and Defendant Lederer's liability for Watertown Sprecher's minimum wage violations through his ownership of the parent entity Sprecher's Restaurant & Pub, which was responsible for causing Watertown Sprecher's violations of the minimum wage laws.

Watertown Sprecher was not eligible to claim a tip credit against the minimum wage under both the FLSA and Wisconsin law, so that it violated both by paying to the Plaintiffs $2.33 per hour when they worked as servers; and $7 per hour when they worked as bartenders.  Notices that Watertown Sprechers provided to the Plaintiffs under the FLSA were deficient by failing to inform the Plaintiffs the amount of the tip credit claimed, that the amount of the tip credit cannot exceed the actual value of tips they received, that absent a valid tip pooling arrangement all tips they

receive must be retained by them, and that the tip credit cannot apply to employees who did not receive required tip credit notices.  Defendants' Point of Sale System ("POS System") cannot satisfy the Wisconsin requirement for signed tip declarations when the employees never signed to verify the accuracy of the tips they were entering through the POS system, when employees never verified their tips on a payroll period basis, and when Defendants did not maintain any records showing the amount of tips that employees declared through the POS system.  Because the POS System does not comply with Wisconsin regulations governing signed tip declarations, Watertown Sprecher must pay its tipped employees $7.25 rather than $2.33 per hour, so that they can file suit under Wis. Stat. §109.03(5) to recover minimum wages owed under DWD §272.03(1).

Plaintiffs are similarly entitled to summary judgment holding that they are entitled to the minimum wage free and clear of the costs of a second uniform shirt.  Because Plaintiffs needed to clean up tables and spills while working, they needed a second uniform shirt to comply with Defendants' requirements that they both wear clothing with Sprechers' logo on it, and maintain a clean and sanitary appearance at all times.  There is no dispute Watertown Sprecher credited to Tamsyn Bruske shifts that Ryea Bruske worked, thereby depriving Ryea Bruske of credit for additional hours worked over 40 per week for which she is entitled to overtime pay.  Ryea Bruske is entitled to recover the overtime pay from Watertown Sprecher when it knew from its own work schedules, the observations of its supervisors, and the time clock punches that it was Ryea Bruske rather than Tamsyn Bruske who worked the shifts.

Sprecher's Restaurant & Pub promulgated an employee handbook whose section on employee compensation Watertown Sprecher adopted without modification.  Said Handbook both stated Sprecher's Pub & Restaurant's intent to claim a tip credit against the minimum wage; and that Sprecher's follows applicable wage and hour laws.  The accountant and payroll companies

that the accountant hired therefore acted as agents of Sprecher's Restaurant & Pub s when they both decided what notices of the tip credit to give to employees at each restaurant; and when they more generally decided how to comply with wage and hour laws, including Wisconsin's tip declaration requirement before sub-minimum wages could be paid to tipped employees.  Under both the FLSA and Wisconsin law Sprecher's Restaurant & Pub is responsible for causing, and therefore is liable for Watertown Sprecher's violation of the FLSA and Wisconsin Law's minimum wage requirements. Lederer as the owner of the unincorporated Sprecher's Restaurant & Pub is personally liable for all minimum wages that Sprecher's Restaurant & Pub owes to the Plaintiffs.

**II.      Argument.**

1.      The Plaintiffs are Entitled to Summary Judgment on Liability.

When appropriate, summary judgment is a favored means of final disposition of lawsuits without the need for evidentiary hearings. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court may grant summary judgment 'if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ. P. 56(c).  A party may seek summary judgment on a  part of a claim or defense. Fed. R. Civ. P. 56(a).  Similarly, Plaintiffs may seek summary judgment on liability while leaving for settlement or trial the question of the amount of damages owed to them.

In determining whether there are any genuine issues of material fact, Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 250 (1986). Only disputed facts which are "outcome determinative" serve to preclude the entry of summary judgment. *Id.* The party opposing the motion must "affirmatively demonstrate with

specific factual allegations that a genuine issue of material fact exists and requires trial." *Morgan v. Harris Trust & Savings Bank of Chicago*, 867 F. 2d 1023, 1026 (7th Cir. 1989).

In this case, even when the evidence is construed in favor of Defendants Watertown Sprecher and Lederer, it demonstrates that Watertown Sprecher failed to give to the Plaintiffs notices of the tip credit required by the FLSA, that Watertown Sprecher neither obtained nor maintained signed tip declarations for each pay period for the Plaintiffs, that the Plaintiffs needed more than one clean shirt with the Sprecher's logo to comply with Watertown Sprecher's requirement that they wear a clean uniform with the Sprecher's logo on it at all times, that Watertown Sprecher knew Ryea Bruske worked the hours that it paid to Tamsyn Bruske, that Sprecher's Restaurant & Pub was responsible for causing the minimum wage violations at Watertown Sprecher, and that Sprecher's Restaurant & Pub is an unincorporated entity owned at least in part by Kevin Lederer. Pursuant to these undisputed facts Plaintiffs are entitled to summary judgment against both Watertown Sprecher and Lederer.

2.   Watertown Sprecher Cannot Claim a Tip Credit against Minimum Wages Owed to the Plaintiffs Under the FLSA When It Failed to Give to the Plaintiffs Notices of the Tip Credit Required by the FLSA.

a.   Relevant Facts.

Throughout the entire time period that both Bruskes worked at Watertown Sprecher, they received a wage rate of $2.33 per hour when they worked as servers. (PFOF ¶1) Tamsyn Bruske received a wage rate of $7 per hour on each day she worked as a bartender, while Ryea Bruske received a wage rate of $7 per hour when she worked as a bartender between November 12, 2018 until May 5, 2019. (PFOF ¶2) Watertown Sprecher adopted and used the Sprecher's Restaurant & Pub employee handbook without making any modifications to its section addressing employee compensation. (PFOF ¶3) The handbook states that we "i.e. Sprecher's" applies tips earned by tipped employees towards a percentage of the current minimum wage requirement. (PFOF ¶4)

Responding to Plaintiffs' discovery requests, Watertown Sprecher stated it would inform employees of their cash wage, that the minimum wage is $7.25 per hour, and that Sprecher's applies tips towards the current minimum wage.  (PFOF ¶5) During interviews, employees would be told that a tip credit would be taken, and that the tip credit was the difference between what they were paid in cash and the minimum wage. (PFOF ¶6) Watertown Sprecher posted at the Watertown Restaurant a Wisconsin minimum rates poster that stated the Wisconsin minimum wage was $7.25 per hour for non-tipped employees and $2.33 per hour for tipped employees; but that does not include any other notices regarding the tip credit.  (PFOF ¶7) Watertown Sprecher admits its POS system did not provide any notices of the tip credit to its employees.  (PFOF ¶8)

During the workweek of May 13 to May 19, 2019, Defendants' payroll records show Tamsyn Bruske was credited for working, and Watertown Sprechers believed at the time Tamsyn Bruske worked as a bartender on May 13 and May 16, 2019; and that she did not work as a server during the week. (PFOF ¶9) The same records show Tamsyn Bruske did not receive any tips during the bartender shifts on May 13 and May 16, 2019, so her total wage received for her bartender work hours was $7.00 per hour.  (PFOF ¶10) No supplements were paid to Tamsyn to bring her bartender wage rate for May 13 and May 16, 2019 up to $7.25 per hour. (PFOF ¶11) Nor did Tamsyn receive straight time pay above $7.25 per hour for any of her hours worked during the week, so that nothing could offset Watertown Sprechers' failure to pay the minimum wage to Tamsyn for her bartender hours.  (PFOF ¶12) Watertown Sprecher therefore did not make up the difference if an employee's cash wages plus tips fell short of the minimum wage.

b.     Federal Law Clearly Defines What Notices of the Tip Credit An Employer Must Provide Before It Can Claim a Tip Credit.

If at the summary judgment stage an employer cannot meet its burden of demonstrating it provided to its employees information concerning the tip credit required by 29 C.F.R. §531.59(b),

then the employee is entitled to a ruling as a matter of law that the employer was required to pay him the full minimum wage in cash.  *Hussein* v. Jun-Yun, LLC, 472 F. Supp. 2d 488, 493 (E.D. WI. 2020);. *Gabryszak v. Aurora Bull Dog Co.*, 427 F.Supp.3d 994, 1005 (N.D. IL. 2019).  This result is also required by the plain language of §203(m)(2) of the FLSA, which states: "The preceding 2 sentences (i.e. the provisions that authorize the employer to count tips received by the employee towards the minimum wage owed to the employee) shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."

Pursuant to the plain language of §531.59(b), the employer must provide five pieces of information concerning the tip credit to its employees:  (1)The amount of the cash wage that is to be paid to the tipped employee by the employer; (2)the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, (3) that the amount of the tip credit claimed by the employer may not exceed the value of the tips actually received by the employee; (4) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.  Similarly, for the time period before §531.39(b) was adopted, to claim a tip credit the employer must inform its employees both how much the cash wage will fall short of the current minimum wage; and that the employer must make up the difference if tips plus the cash wage do not at least match the current minimum wage.  *Schaefer v. Walker Brothers Enterprises Inc*., 829 F. 3d 551, 556-557 (7th Cir. 2016).

Courts have strictly applied these requirements.  An employer therefore is not eligible to claim a tip credit against the minimum wage when it failed to explain to its employees what would

6

happen if their cash wage plus tips fell short of the minimum wage, that employees must retain all tips, and that the tip credit does not apply to employees who have not been informed of the requirements of §531.59.  *Hussein*, 472 F. Supp. 3d at 492-493.  Similarly, in *Gabryszak* an employer was not eligible to claim a tip credit when it failed to inform its employees either by how much their cash wage fell short of the minimum wage, or that it would make up the difference if their cash wages plus tips fell short of the full minimum wage.  *See* 427 F. Supp. 3d at 1005.

c.    <u>Watertown Sprechers Failed to Provide to Plaintiffs Notice Required by §531.59(b)</u>.

Watertown Sprechers failed to provide to the Plaintiffs (at least) the same three pieces of information that the employer in *Hussein* failed to provide:  First, it never told the Plaintiffs either that it would make up the difference if their cash wages plus tips fell short of the minimum wage, or that the amount of the tip credit that it claimed could not exceed the value of tips that the Plaintiffs received.  Second, it never told the Plaintiffs that they had the right to retain all of their tips absent a valid tip pooling arrangement.  Third, it never told the Plaintiffs that it was not eligible to claim a tip credit for any employees who did not receive notices concerning the tip credit that are required by law. (PFOF ¶¶5-7) As *Hussein* held, the failure to provide any of these three pieces of information bars Watertown Sprecher from claiming a tip credit against the full $7.25 minimum wage owed to the Plaintiffs.

In addition to failing to communicate to the Plaintiffs that it would make up the difference if their cash wages plus tips fell short of the minimum wage, Defendants in fact failed to adopt any safeguards to make up the difference if a tipped employee's cash wages plus tips fell short of the minimum wage.  During the week of May 13 to 19, 2019, Tamsin Bruske received $7 per hour with no tips for bartender work hours that Watertown Sprechers at the time believed she worked; yet did not receive any supplemental wages to bring her up to the minimum wage of $7.25 per

7

hour.  Watertown Sprecher failed to inform its employees that it would make up the difference if their cash wages plus tips fell short of the minimum wage because it in fact had no policy to do so.

Watertown Sprechers additionally violated §531.59(b) by failing to tell employees the additional amount by which their wages increased on account of the tip credit.  The plain language of the regulation requires the employer to tell the tipped employee the amount of the tip credit claimed, rather just what the non-tipped minimum wage is, because the employer is allowed to claim a tip credit that brings the employee's total wage rate above $7.25 per hour.   29 C.F.R. §531.60; *Perrin v. Papa John's Int'l, Inc*., 114 F. Supp. 3d 707, 729 (E.D. MO. 2015) (Claiming a higher tip credit increases the regular rate, so expenses incurred by the employee would not cut into the required minimum wage; but would increase the regular rate used to compute overtime pay).  Watertown Sprecher never communicated to the Plaintiffs whether it was claiming a tip credit that brought their total wage rate up to or above $7.25 per hour.  Plaintiffs therefore had no way to know whether should look to Watertown Sprecher for reimbursement of their uniform expenses incurred for its benefit, or whether they were entitled to overtime pay above 1.5 times the minimum wage.  Merely telling the employee what their cash wage is and what the minimum wage is does not comply with §531.59(b).

      3.     <u>Watertown Sprechers is not Entitled to Claim a Tip Credit Under Wisconsin Law Because It Neither Obtained Nor Maintained in Its Time and Payroll Records Signed Tip Declarations from the Plaintiffs</u>.[1]

      a.     <u>Relevant Facts</u>.

In response to the Plaintiffs' discovery requests, Watertown Sprecher claims that the combination of its POS System and its pay stubs comply with the tip declaration requirement.

---

[1] Plaintiffs' claim for Wisconsin minimum wages would not be mooted, were the Court to find that they were entitled to the full minimum wage under the FLSA.  Plaintiffs are eligible to recover separate liquidated damages for the same minimum wage violation under the FLSA and Wis. Stat. §109.11(2).

(Docket #42-2, answer to interrogatory #6) However, Watertown Sprecher's pay stubs are not signed by employees. (PFOF ¶13) Watertown Sprecher produced to the Plaintiffs a video that showed every screen an employee would have to encounter, and every stroke the employee would have to make, in order to enter tips into the POS system.  (PFOF ¶14) The process of entering tips into the POS system starts with the Shift Review Screen, then the Declare Tips Screen, then entering the amount of tips received during the shift on a computer screen, then going to the close shift screen, then print report. (PFOF ¶15) The video does not show the employee is either required or asked to acknowledge the accuracy of the tips that she is entering at any point while entering her tips into the POS system. (PFOF ¶16). The employee is never asked to verify on a biweekly payroll period basis that the POS system had correctly added up the tips that she entered or declared each day through the POS System. (PFOF ¶17)

Defendants maintain payroll records that show the total amount of tips that according to the Defendants' records each employee entered or declared each day. (PFOF ¶18) However, nothing in the computer printout of the Defendants' payroll records indicated the Plaintiffs ever signed or authenticated the accuracy of any of the tip amounts that the computer system claims they declared. (PFOF ¶19)

b.    Plaintiffs May File Suit for Wisconsin Minimum Wages.

DWD §272.03(1) requires Wisconsin employers to pay to their employees a minimum wage of $7.25 per hour[2].  §272.03(2) states that if the employer meets the burden of proof set out in §272.03(2) states that an employer may pay its tipped employees a minimum wage of no lower than $2.33 per hour if it can establish through its payroll records that the employee received wages

[2] Plaintiff's opposition to the Defendants' early motion for summary judgment on the Wisconsin tip credit issue erroneously referenced DWD §274.03 rather than §272.03.  The correct reference is clearly to the minimum wage requirement of §272.03, rather than to DWD §274.03 that addresses overtime pay.

plus tips no less than the minimum wage.  §272.03(2)(b)1 then explains that in order to establish the employee received wages plus tips no less than the minimum wage, the employer must meet its burden of maintaining in its time and payroll records tip declarations signed by the tipped employee each pay period; so that if the employer's time and payroll records do not contain these requirements no tip credit shall be allowed.

Therefore, if an employer fails to comply with the recordkeeping requirements of §272.03(2)(b)1, then it becomes subject to §272.03(1), which requires it to pay to its tipped employees $7.25 per hour. Wis. Stat. 109.03(5) allows the employer to file suit to recover all wages earned by the employee that were not paid within 31 days of when they were earned.  The employee is allowed to file suit to recover wages that are required to be paid by the Wisconsin Administrative Code, though not required by either a contract or an employer policy.  *German v. Wisconsin DOT*, 2000 WI 62 ¶29; 235 Wis. 2d 576.  (Employees may bring a claim for the full amount of wages owed for on-duty meal breaks as required by DWD §274.02(3)); *Spoerle v. Kraft Foods Global*, 614 F. 3d 427, 429 (7th Cir. 2010) (Employees entitled to recover under Wis. Stat. §109.03 for time spent donning and doffing safety gear that must count as hours worked under DWD §272.12(2)(e); though donning and doffing time was unpaid under their CBA).

The employee's right to file a private lawsuit to recover wages under Wisconsin law extends to unpaid minimum wages as well as to overtime pay.  *Hussein*, 472 F. Supp. 3d at 494; *Bitner v. Wyndham Vacation Resorts*, 2013 WL 5878724 *4 (W.D. WI. 2013) (Plaintiffs have stated a claim for Wisconsin minimum wages under Wis. Stat. §§104.02 and 109.03(1)); *Johnson v. Roma II-Waterford, LLC*, 2013 WI App 38 ¶¶14-15, 346 Wis. 2d 612 (Employee who recovered minimum wages following a trial entitled to attorneys' fees under Wis. Stat. §109.03(6); which only applies to the prevailing party in a §109.03(5) wage claim).  Similarly, if an employer is

required by DWD §272.03(1) and (2) to pay to its tipped employees a minimum wage of $7.25 per hour yet failed to do so, the employee may file suit under §109.03(5) to recover minimum wages that the Wisconsin Administrative Code requires his employer to pay to him.

Plaintiffs are relying on §272.03(2)(b)1 to meet an element of their claim for Wisconsin minimum wages, to prove Watertown Sprechers was required by law to pay to them a minimum wage of $7.25 per hour rather than $2.33 per hour.  Plaintiffs are not seeking any remedies for Watertown Sprecher's recordkeeping violations unrelated to its underpayment of legally required wages to them.  For example, Ryea Bruske is not seeking any remedy for bartender work hours for which she received $8 per hour, though she received tips without signing tip declarations for those hours worked.

A statute does not itself authorize a private right of action can nonetheless be relied upon to demonstrate a required element of a recognized cause of action.  *Wisconsin Dairies Co-Op v. Citizens Bank & Trust*, 160 Wis. 2d 758, 773 (1991) (Though Wis. Stat. §779.02(5) does not authorize a lawsuit against a Bank, it can be relied upon to establish subcontractors had a superior claim to trust funds than a bank); *Mlynarski v. St. Rita Congregation of West Allis*, 31 Wis. 2d 54, 61 (1966) (Though Wisconsin Safe Place Statute does not create a cause of action, a violation of the Wisconsin safe place statute can be relied upon to demonstrate negligence). Similarly, Plaintiffs can rely on DWD §272.03(2)(b)1 to demonstrate that they were entitled to receive a minimum wage of $7.25 per hour pursuant to §272.03(1), rather than a minimum wage of $2.33 per hour pursuant to §272.03(2).  This is just like though the FLSA does not authorize a private right of action for recordkeeping violations, the employee can rely on the employer's failure to maintain records required by law as a part of her presentation to prove up her damages. *Farmer v. Directsat USA, LLC*, 2010 WL 3927640 *12 (N.D. IL. 2010) (No private right of action for

recordkeeping violations under the FLSA); *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (Once Plaintiffs proved Defendant failed to maintain records required by law, they can rely on a time study to establish the amount of unpaid work time as a matter of fair and just inference). Once Plaintiffs are able to demonstrate they were entitled to a minimum wage of $7.25 per hour, Wis. Stat. §109.03(5) expressly authorizes them to file suit to recover all minimum wages that Watertown Sprecher failed to timely pay them.

The cases relied on by Watertown Sprecher only stand for the proposition that Wis. Stat. §109.03(5) provides a remedy for the underpayment of wages rather than recordkeeping violations. *See for example Spoerle v. Kraft Foods Global*, 527 F. Supp. 2d 860, 872 (W.D. WI. 2007). The cases do not address instances in which an employer's failure to comply with a recordkeeping regulation increased the amount of wages it is required to pay to its employees, thereby causing a underpayment of wages. The cases cited by Watertown Sprecher therefore do not prohibit the Plaintiffs from relying on recordkeeping violations to demonstrate they were entitled to a minimum wage of $7.25 rather than $2.33 per hour.

Nor is there any valid basis to distinguish cases such as *Spoerle* and *German* on the ground that they involved the employee receiving no wages at all for some of their hours worked, rather than the employee receiving a wage rate below $7.25 per hour. Since DWD §272.03(1) (a) requires the payment of minimum wages of $7.25 per hour, an employer has violated the statute whether it paid the employee $0 or $7.24 per hour. Here, the Plaintiffs' claim is that because Defendants cannot satisfy the burden of proof required by DWD §272.03(2)(b)1, they are entitled to receive, and may file suit to recover a minimum wage of $7.25 per hour. It should make no difference to the availability of relief under Wis. Stat. §109.03(5) and DWD §272.03(1) whether the underpayment is the full $7.25 per hour or a lesser amount. Just like the Eastern District did

12

in *Hussein*, the Court should recognize tipped employees' right to file a §109.03(5) claim for unpaid minimum wages under Wisconsin law.

c.   <u>Watertown Sprechers Failed to Maintain Signed Tip Declarations In<br>Its time and Payroll Records.</u>

Pursuant to DWD §272.03(2)(b)1, no tip credit shall be allowed unless there are (1) tip declarations signed by the tipped employee (2) each pay period; and (3) that are contained in the employer's time and payroll records. Defendants' payroll records plainly cannot satisfy these requirements when they are not signed by employees. *Martin v. United Capital Corp.*, 2019 WL 7811345 * 7 (Conn. Superior Ct. 2019); *Stevens v. Vito's By the Water, LLC*, 2017 WL 6045302 * 3 (Conn. Superior Ct., 2017) (Both holding weekly payroll records such as check stubs, because they are not signed, cannot satisfy the Connecticut requirement for signed weekly tip statements).

Defendants' POS system fails all three of the requirements of §272.03(2)(b)1 as well when the employee's entry of tips into the POS system are not either signed or verified, when the POS system only permits declaration of tips by day rather than by pay period, and when the Defendants maintain no records showing their records of tips declared by their employees match the amount of tips that employees actually declared through the POS system.

First, DWD §272.03(2)(b)1 by its plain language requires for tip declarations to be signed by the tipped employees. A Court must interpret a statute as written rather than to rewrite it. *Bank of Commerce v. Waukesha County*, 89 Wis. 2d 715, 724 (1979). The same rules of interpretation apply to regulations, which must be approved by both the governor and the legislature before they can be implemented. See Wis. Stat. §§227.185, 227.19; *Piper v. Jones Dairy Farm*, 2020 WI 28 ¶25, 390 Wis. 2d 762. (Wisconsin Courts apply the same rules of statutory interpretation to statutes and regulations). The Court similarly must apply rather than ignore the requirement of §272.03(2)(b)1 that tip declarations must be signed by the tipped employee. Since Watertown

13

Sprecher does not claim any employees ever manually signed tip declarations, the remaining question is whether any employee entries through the POS system can constitute electronic signatures. Wisconsin law defines an electronic signature as:

> An electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

Wis. Stat. §137.11(8). The requirement that tip declarations must be signed appears in a section of the regulation entitled burden of proof, so that the purpose of requiring the tipped employee's signature is to require the employee to verify the accuracy of the tips that she entered, so that the verified amount of tips can then be relied upon to establish the employee in fact received the full minimum wage counting tips. A tip declaration therefore is electronically signed when the employee makes some electronic sound, symbol, or process to verify the accuracy of the tips that she has declared. Defendants acknowledge that its POS system does not at any point of the tip entry process require employees to acknowledge the accuracy of the tips that they are entering. (PFOF ¶¶15-16) The Court should therefore rule the employee through the POS system makes tip declarations rather than signed tip declarations; so that the POS system cannot satisfy the requirements of §272.03(2)(b)1 for signed tip declarations. Nor can Defendants avoid liability by citing its need for electronic recordkeeping when they fully understand how to obtain electronic signatures from its employees (PFOF ¶20), yet failed have employees electronically verify the accuracy of the tips that they are declaring through the POS system.

Second, §272.03(2)(b)1 by unambiguous language requires for the employer to have tip declarations signed by its employees each pay period. The same regulation also requires the employer to show it has withheld all required social security and other taxes. That the regulation requires a signed tip declaration for each pay period rather than each week (which is the unit for determining minimum wage compliance, see DWD §272.03(7)) indicates one purpose of the

signed tip declaration requirement is to require the employee to verify that his employer has correctly added up the tips that she declared during each pay period, so that her paycheck is withholding all required social security and other taxes from her tips on her paycheck as required by §272.03(2)(b)1.  Daily tip declarations cannot comply with the regulation's requirement for signed tip declarations each pay period because daily declarations do not verify the employer has tallied up the amount of tips correctly for each pay period; and therefore cannot be used to verify that correct withholdings of taxes have been made.  Nor does the Court have license to rewrite the regulation to require a signed tip declaration each day, rather than (as required by the regulation's plain language) a signed tip declaration each pay period. *Bank of Commerce*, 89 Wis. 2d at 724; *Piper*, 2020 WI 28 ¶25. *See by analogy Martin*, 2019 WL 7811345 * 7 (Daily entry of tips by employees cannot satisfy the requirement for signed weekly tip statements).  In this case, the POS system never asked the employee to verify that their employer has correctly added up their tips for each biweekly payroll period. (PFOF ¶17) Even if Watertown Sprecher obtained daily signed tip declarations from the Plaintiffs through its POS system, the POS system cannot satisfy the requirement for signed tip declarations each pay period.

Third, DWD §272.03(2)(b)1 requires the employer to retain the actual signed tip declarations in its time and payroll records, before it could claim a tip credit against minimum wages owed to its employees.  By the plain language of the regulation an employer that chose to have employees sign paper tip declarations must retain the paper tip declarations in its records, rather than throw the tip declarations away once the declared tips have been entered into its payroll system.  Similarly, if an employer chooses to obtain tip declarations electronically, it must retain some record of the employee's verification of the amount of tips that they have entered, which can then be used to verify the accuracy of the amount of declared tips shown in its payroll system.

Here, Watertown Sprecher has maintained a summary record of the amount of tips that it claims each employee declared each shift, but no independent record verified by the employee that can be used to corroborate the accuracy of the tip amounts shown by its summary record. (PFOF ¶¶18-19) What Watertown Sprecher has done is the equivalent of entering the tip amounts shown on tip declarations into its payroll system, and then throwing away the tip declarations.  Even if entries into the POS system can constitute signed tip declarations for each pay period, Watertown Sprecher has failed to maintain said "signed tip declarations" in its time and payroll records as required by DWD §272.03(2)(b)1.

Nor can Defendants succeed by arguing there is no difference between a POS system and handwritten declarations of tips.  Handwritten declarations of tips would not comply with §272.03(2)(b)1 either if they were not signed by the employees, if they were only obtained on a daily rather than pay period basis, or if they were thrown away once the employer entered the amount of tips into its payroll system.  Defendants could have complied with §272.03(2)(b)1 by having employees electronically verify the amount of tips that they are declaring each pay period, and to maintain in its time and payroll records each such verification.

Instead of actually analyzing the requirements of DWD §272.03(2)(b), Defendants' position can be summarized in a single sentence:  Because the DWD adopted the enforcement standard that POS system complies with §272.03(2)(b), the Court should adopt the DWD's enforcement standard as the correct interpretation of the regulation while ignoring its plain language.  However, Wisconsin courts no longer accord any deference to the agency's interpretation of the law.  *Lamar Central Outdoor, LLC v. Division of Hearings & Appeals*, 2019 WI 109 ¶9, 386 Wis. 2d 486; *Cree, Inc. v. LIRC*, 2021 WI App 4 ¶11; 395 Wis. 2d 642 (When reviewing only matters of law a court gives no deference to the legal decisions of the agency). An

agency's interpretation therefore should be overruled when it is contrary to the plain language of the statute. *Hall v. Wisconsin Department of Justice*, 2020 WI App 12 ¶¶10-14; 391 Wis. 2d 378. Since Wisconsin regulations must be approved by the governor and the legislature before they are published and can take effect, See Wis. Stat. §§227.185 to 227.21, even when Wisconsin courts were giving deference to the agency's interpretations an agency has no authority to interpret a regulation in a manner contrary to the plain language of the regulation. *Wisconsin Dep't of Revenue v. Menasha Corp.*, 2008 WI 88 ¶45, 311 Wis. 2d 579 (Even under great weight deference the Court should disregard an agency interpretation that is either inconsistent with the language of the agency's own regulation or is clearly erroneous).  Even if due weight deference was appropriate, an agency interpretation that would leave provisions of a statute superfluous should be rejected. *Myers v. Wisconsin Dep't of Natural Resources*, 2019 WI 5 ¶17, 30-31; 385 Wis. 2d 176.  The exact same rule should also apply when the Court is reviewing an agency's interpretation of a regulation rather than a statute. *Piper*, 2020 WI 28 ¶25.

Here, adopting the DWD's enforcement position on DWD §272.03(2)(b)1 would ignore its plain language requiring tip declarations to be signed, to be for each pay period, and for the employer to maintain in its time and payroll records the actual signed tip declarations.  The DWD has no license to rewrite the regulation without going through the Chapter 227 process to obtain the governor and the legislature's approval for the amendment.  The Court should enforce the plain language of the regulation to find that because Watertown Sprecher does not qualify under DWD §272.03(2)(b)1, the Plaintiffs were entitled to receive a minimum wage of $7.25 per hour. Watertown Sprecher therefore violated DWD §272.03(1) by paying to the plaintiffs a cash wage of $2.33 per hour when they worked as servers; and a cash wage of $7 per hour during a portion of the time period when they worked as bartenders.

    3.    <u>Plaintiffs Were Entitled to Receive the Minimum Wage Free and Clear of</u>
<u>the Costs of Their Second Uniform</u>.

        a.    <u>Relevant Facts</u>.

Watertown Sprecher required both servers and bartenders to wear a Sprecher's shirt with the Sprecher's logo on it. (PFOF ¶21) Employees were required to maintain their uniform shirts in clean and sanitary condition throughout their shift. (PFOF ¶22) Employee received one shirt for free but had to purchase any additional shirts. (PFOF ¶23) Ryea Bruske signed an authorization for a second shirt on September 29, 2018; within five days of the first shift that she worked at the Sprechers' Watertown restaurant.  (PFOF ¶24) While working as either a server or a bartender, Bruske frequently needed to deal with condiments, drinks, and sauces both when serving food and when cleaning up, so that she needed a second, backup shirt to make sure she could comply with the requirement that she present a clean and sanitary appearance to the restaurant's customers. (PFOF ¶25) Bruske therefore purchased a second uniform shirt within a week of when she started working at the Watertown restaurant.  (PFOF ¶26)   If the employee wanted a second shirt with the Sprecher's logo on it, she must pay for the costs of the second shirt. (PFOF 52)

        b.    <u>The Second Uniform Shirt is Primarily for Watertown Sprecher's</u>
<u>Benefit</u>.

The employee must receive the minimum wage free and clear of expenses that she incurred for the benefit or convenience of her employer.  *Arriaga v. Florida Pacific Farms, LLC*, 305 F. 3d 1228, 1237 (11th Cir. 2002), citing and following 29 C.F.R. §531.35.  Where the nature of the business requires employees to wear uniforms, the costs of the uniform are primarily for the convenience of the employer.  29 C.F.R. §531.3(c)(2).  Courts have followed the regulation in holding employees paid at exactly the minimum wage cannot be required to purchase uniforms at their own cost.  *Dix Palombo Inc. v. RCSH Operations, LLC*, 2020 WL 5894849 * 3 (M.D. FL. 2020); *Nail v. Shipp*, 2019 WL 3719397 * 7-8 (S.D. AL. 2019).  *See also Burton v. DRAS Partners,*

*LLC*, 2019 WL 5550579 * 2 (N.D. IL. 2019) ("job-related expenses primarily for the benefit of the employer (such as tools or uniforms) can't be charged to the employee if the expenses would drive the employee's pay below minimum wage.")  Similarly, Plaintiffs cannot be charged for the costs of uniform shirts that they needed to comply with the Defendants' requirements that they must at all times present a clean and sanitary appearance while wearing a shirt that has a Sprecher logo on it, if charging them for the shirts dropped their hourly wage rate below $7.25 per hour.

The employer's obligation under the FLSA is to provide the employee with a sufficient number of uniforms relative to the nature of the employee's work assignments and job duties; rather than only a single uniform in all cases.  DOL Wage and Hour Opinion Letter, 2018 WL 5483046 * 1 (Oct. 24. 2018).  Watertown Sprecher cannot avoid liability by claiming Plaintiffs only needed one uniform shirt to comply with its uniform requirements.   This is because employees frequently dealt with drinks, condiments, and sauces while working, so that to present a clean and sanitary appearance eat all times despite the risk of spills they needed a second backup shirt with the Sprecher's logo on it.  (PFOF ¶25) Plaintiffs recognize that there may be factual disputes over how many uniforms they purchases and how many uniforms they needed to comply with Watertown Sprecher's requirements, so that they are not seeking summary judgment other than for the second uniform shirt.

For the reasons stated in sections 2 and 3 above, none of the tips the Plaintiffs received could count toward the minimum wage, so that the costs of the second uniform shirt increases the amount of minimum wage damages that they are entitled to.  There would be a violation even if Defendants were allowed to claim a tip credit against the minimum wage owed to the Plaintiffs: Defendants claim the correct overtime rate for the Plaintiffs is $5.96 as a server and $10.63 as a bartender, which compared to the minimum overtime wage of $10.88 equals a claimed tip credit

of $4.92 per hour as a server, and $0.25 per hour as a bartender. (PFOF ¶27) A tip credit of $4.92 added to a cash wage of $2.33 per hour, just like a tip credit of $0.25 added to a cash wage of $7 per hour, equals $7.25 per hour.  Watertown Sprecher therefore claimed a tip credit that brought the Plaintiffs up to rather than above the minimum wage rate of $7.25 per hour. Since Plaintiffs received cash wages and tip credits that only brought them up to the minimum wage, any uniform costs that primarily benefit Watertown Sprecher would bring their free and clear wages received below the required minimum wage rate of $7.25 per hour.

     5.     <u>Watertown Sprecher's Liable for Overtime Pay for All Hours worked by Ryea Bruske that It was Aware of</u>.

During the 2018-2019 school year Tamsyn Bruske lived on campus in Milwaukee, so that she would not work at the Sprecher's Watertown restaurant between Monday and Thursday of each week during the school year.  (PFOF ¶28) Each Monday through Thursday shift as a bartender between February and May of 2019, which Watertown Sprecher's record show were worked by Tamsyn Bruske, were instead worked by Ryea Bruske.  (PFOF ¶29) Two of these shifts were 11.93 hours that Tamsyn was credited as working on March 25, 2019 and 6.23 hours that she was credited as working on March 27, 2019. (PFOF ¶30) During the week of March 25 through March 31, 2019 Ryea Bruske was paid for a total of 37.82 hours worked, so that she would have qualified for overtime pay for the week if she had also been credited with the 18.16 hours that she rather than Tamsyn worked.  (PFOF ¶31) For the pay period of March 25, 2019 to April 7, 2019 Tamsyn Bruske did not receive any overtime pay. (PFOF ¶32)  Watertown Sprecher therefore saved on overtime costs by misallocating hours worked by Ryea to Tamsyn.

Watertown Sprecher communicated work schedules to its employees through an electronic system called Shift Notes.  (PFOF ¶33) Supervisory approval is required before employees may trade shifts with each other. (PFOF ¶34) Work schedules that Watertown Sprecher produced

during discovery show Ryea Bruske was scheduled to work both the lunch and dinner shifts on March 25, 2019 and the dinner shift on March 27, 2019; while Tamsyn Bruske was not scheduled to work on either one of those two days. (PFOF ¶35) Ryea Bruske punched in for each of her shifts that Watertown Sprecher credited to Tamsyn under her own name rather than Tamsyn's name. (PFOF ¶36) Nor did Ryea Bruske have access to the Defendants' electronic system to change scheduled work hours shown in the system.   (PFOF ¶37) During each of the Monday through Thursday shifts that were worked by Ryea but credited to Tamsyn, only Ryea had interaction with the supervisors at the restaurant. (PFOF ¶38)

Undisputed facts show Watertown Sprecher was aware that it was Ryea rather than Tamsyn Bruske who worked the March 25, 2019 and March 27, 2019 bartender shifts in three ways:  Only Ryea Bruske was scheduled to work on each of these two days; its supervisors would have only seen Ryea Bruske working at the restaurant on those two days; and because its punch records (at least before alteration) would have shown that it was Ryea Bruske rather than Tamsyn Bruske who punched in and out of work on those two days. Since the supervisors at the Watertown restaurant had to have known that it was Ryea rather than Tamsyn who worked the shifts, their knowledge can be imputed to Watertown Sprecher. *Skelton v. American Intercontinental University Online*, 382 F. Supp. 2d 1068, 1073 (N.D. IL. 2005).

While some courts have recognized an employer defense of estoppel, establishing the defense requires the employer to show both that the employee affirmatively misled the employer regarding the number of hours she worked, and that the employer had no knowledge of the employee's actual hours.  *Thurman v. Stavuru Academy*, 2019 WL 951243 * 6 (N.D. IL. 2019). Here, Ryea Bruske did nothing to prevent Watertown Sprecher from discovering that she rather than Tamsyn worked the shifts:  She worked the hours that she was scheduled to work; and

punched in and out of work under her own name.  She therefore did nothing to prevent Watertown Sprecher from discovering that it was her rather than Tamsyn who worked the Monday through Thursday bartender shifts.

The result is no different even if Watertown Sprecher claims Ryea consented to crediting her work hours to Tamsyn.  The FLSA does not allow employees to waive liquidated damages for untimely paid wages, let alone actual minimum overtime wages owed to them.  *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-707 (1945); *Heder v. City of Two Rivers*, 295 F. 3d 777, 782 (7th Cir. 2002) (Employer cannot rely on a training cost reimbursement agreement to pay to its employees overtime pay equal to 128% rather than 1.5 times their regular rates); *Howard v. City of Springfield*, 274 F. 3d 1141,1148 (7th Cir. 2001) (Employees' enthusiastic consent to the deferral of overtime wages is ineffectual). Once Watertown Sprecher was aware that it was Ryea Bruske rather than Tamsyn Bruske who worked the bartender shifts that were credited to Tamsyn, even Ryea's enthusiastic consent cannot relieve Watertown Sprecher of its obligation to pay to Ryea full overtime pay for each and every one of her hours worked over 40 per week.  Ryea Bruske as a matter of law is entitled to all overtime pay she should have received once she is credited for having worked the hours that Watertown Sprecher incorrectly credited to Tamsyn.

6.     Plaintiffs are Entitled to FLSA Liquidated Damages On Their Unpaid Minimum Wage and Overtime Wages.

Under 29 U.S.C. §216 and §260, it is the norm rather than the exception for an employer that is liable for unpaid wages to also be liable for an equal amount as liquidated damages.  *Uphoff v. Elegant Bath, Ltd.*, 176 F. 3d 399, 405 (7th Cir. 1999).  An employer who belatedly pays the full amount of wages owed to its employees would nonetheless be liable for liquidated damages for the belated paid wages.  *Gangi*, 328 U.S. at 116; *O'Neil*, 324 U.S. at 707-708.  Since an employer must demonstrate that its violation of the FLSA was both objectively and subjectively reasonable,

an employer that violated the FLSA with a good heart but an empty head is liable for liquidated damages. *Walton v. United Consumer Club, Inc*., 786 F. 2d 303, 312 (7th Cir. 1986). A court may not reduce or eliminate the employer's liability for liquidated damages unless the employer meets its burden of proving both that it acted in good faith, and that it had reasonable grounds for believing that it was not violating the FLSA. 29 U.S.C. §260; *Uphoff,* 176 F. 3d at 405-406.

An employer cannot meet its burden of showing it had an objectively reasonable basis for believing it complied with the FLSA unless it undertook affirmative steps to ascertain the FLSA's requirements. *Martin v. Cooper Elec. Supply Co*., 940 F. 2d 896, 908 (3rd Cir. 1991); *Dominici v. Bd of Ed. Of City of Chicago*, 881 F. Supp. 315, 322 (N.D. IL. 1995); *Paulitz v. City of Naperville*, 874 F. Supp. 833, 835 (N.D. IL. 1994). Because compliance with industrial custom demonstrates subjective good faith only, an employer cannot rely on compliance with industrial custom to demonstrate it had an objectively reasonable basis for adopting payroll policies that violated the FLSA. *Paulitz*, 874 F. Supp. at 834-835; *Morse v. MER Corp*., 2010 WL 4812792 (S.D. IN. 2010). Moreover, because the employer has the burden of proof on willfulness, Plaintiffs can obtain summary judgment by pointing out to the Court the lack of record evidence showing the employer had an objectively reasonable basis for their violations of the FLSA. *Celotax v. Catrett*, 477 U.S. 317, 325 (1986).

Here, there is no objectively reasonable basis for Watertown Sprecher to believe the notices of the tip credit that it provided to its employees complied with the FLSA. As explained above, the Defendants' notices violate at least three aspects of 29 C.F.R. §531.59(b), a regulation that has been in place since 2011: Watertown Sprecher fail to give its employees any notice that the amount of the tip credit it claimed cannot exceed the value of actual tips they received (i.e. employer would make up the difference if their cash wages plus tips fell short of the minimum wage); that absent

a valid tip pooling arrangement the employees had the right to retain all tips, and that the tip credit shall not apply to employees who did not receive legally required notices concerning the tip credit. No employer who conducted a reasonable investigation can believe notices of the tip credit that Watertown Sprecher provided to its tipped employees complied with the FLSA.

Similarly, no evidence in the record shows the Defendants conducted any investigation into either whether Ryea Bruske can waive overtime wages by consenting to transfer her work hours to Tamsyn Bruske, or whether a second required uniform shirt for employees who must present a clean and sanitary appearance at all times despite frequently cleaning up drinks, sauces, and condiments is primarily for the employer's benefit.  Defendants therefore cannot avoid paying liquidated damages on each and every penny of FLSA damages that they owe.

7. Kevin Lederer is Personally Liable for All FLSA and Wisconsin Minimum Wages Owed to the Plaintiffs as the Owner of the Unincorporated Sprecher's Restaurant & Pub.

a. Relevant Facts.

A single entity named Sprecher's Restaurant & Pub issued an employee handbook stating that Sprecher's strives to maintain an equitable and balanced compensation program, that wage increases depend on the overall economic conditions of Sprecher's, that Sprecher's business hours vary by location, that Sprecher's has selected the workweek as Mondays to Sundays, that the pay periods are biweekly, that "we" apply tips earned by tipped employees toward a percentage of the current minimum wage requirement, that Sprecher's follows applicable wage and hour laws,  and that Sprecher's is responsible for making certain deductions from each employee's compensation. (PFOF ¶39)  In other words, it is Sprecher's rather than the individual restaurants that is responsible for complying with wage, hour, and payroll laws.

While each Sprecher's restaurant was theoretically owned by a separate LLC, the same four individuals including Lederer, his wife, and his mother in law and father in law were owners

of each of the LLCs. (PFOF ¶40) Lederer oversaw the operations of each restaurants by both hiring the same accountant for each restaurant, and by authorizing the accountant to hire outside payroll companies to ensure compliance with wage and hour laws at each restaurant. (PFOF ¶¶41-42)

Lederer, who was one of the owners of each LLC that served as the holding company for a location of Sprecher's Restaurant & Pub, provided further testimony showing that the Sprecher's Restaurants were operated as a single unit.  At one point, when asked whether one of his LLCs would sue another for a debt shown on balance sheets, Lederer's answer was: "you wouldn't sue yourself too often, do you?" (PFOF ¶43) Second, when asked about a Sprecher's restaurant at Sheboygan, Lederer testified that "we" had nothing to do with the one licensed location in Sheboygan;" thus suggesting that Sprecher's Restaurant & Pub operated the other Sprecher's locations but not the franchised location in Sheboygan. (PFOF ¶44) Sprecher's Restaurant & Pub additionally represents itself to the public as a single entity, rather than as restaurants operated by separate LLCs. (PFOF ¶45) The same website also contains an article that states Lederer is the owner and leader of Capitol Cuisine, which operates the Sprecher's Restaurants. (PFOF ¶46)

The same accountant and payroll companies decided on procedures to comply with wage and hour laws at each restaurant. (PFOF ¶47) The accountant and the payroll companies that he selected were also responsible for deciding what notices of the tip credit to provide to tipped employees at each restaurant. (PFOF ¶48) All restaurant locations used the same Point of Service tip declaration system, so that Defendants were able to use the POS system for the Lake Geneva restaurant to demonstrate how the POS system for the Watertown restaurant would have worked. (PFOF ¶49) Individual restaurants provided no instructions to either the accountant or the payroll company on how payroll should be computed. (PFOF ¶50)

Sprecher's Restaurant & Pub does not appear as an incorporated entity on the Wisconsin Department of Financial Institutions website. (PFOF ¶51)

b.     Sprecher's Restaurant & Pub and therefore Lederer is liable to Plaintiffs for Unpaid Minimum Wages under the FLSA.

In *Papa v. Katy Industries*, 166 F. 3d 937, 942 (7th Cir. 1999), the Seventh Circuit recognized three scenarios under which small employers can be aggregated together to determine whether they had a sufficient number of employees to be subject to anti-discrimination laws, second of which is if nominally separate entities were split up for the purpose of avoiding liability, the third of which is if the parent entity directed the violation.  *Papa* is consistent with *Esmark v. NLRB*, 887 F. 2d 739, 757 (7th Cir. 1989), which held that a parent entity can be held liable for its own violation of federal labor law when it used its ownership interest to command the actions of its subsidiary.

In *Moldenhauser v. Tazewell-Pekin*, the Court held separation between two employers would not be recognized under the FMLA if they were split for the express purpose of avoiding liability under the FMLA, citing *Papa. See* 536 U.S. 640, 645 (7th Cir. 2008) In other words, the *Papa* test for determining whether nominally separate entities may be considered together for the purpose of imposing liability under federal labor laws equally applies to determining liability under the FMLA.  In *Moldenhauser*, the Court recognized that it made sense to apply the same standard to determine joint employer liability under both the FLSA and the FMLA.  *See* 536 U.S. at 644. The Papa test therefore equally applies to determining liability under the FLSA, so that a parent entity that directed its subsidiary's violation of the FLSA is itself liable under the FLSA.

The evidence shows that (1) Sprecher's Restaurant & Pub through the promulgation of its handbook was responsible for deciding to count the tips toward a percentage of the minimum wage owed to its employees; (2) Sprecher's Restaurant & Pub stated in the same employee handbook

that it rather than the individual restaurants follow applicable wage and hour laws; so that (3) when the accountant and the payroll company were deciding what notices of the tip credit to give to tipped employees at each of the restaurants, they were acting to comply with Sprecher's Restaurant & Pub's directive to comply with wage and hour laws. Sprecher's Restaurant & Pub therefore is responsible for both making the decision to claim a tip credit against the minimum wage at each restaurant; and (through the accountant and payroll companies that it employed) for the decision to provide deficient notices of the tip credit to its employees.

Sprecher's Restaurant & Pub is therefore liable for the failure to pay to the Plaintiffs minimum wages required by the FLSA.  Since Sprecher's Restaurant & Pub is not incorporated, it provides its owners no shield against their own personal liability.  *Central States Pension Fund v. White*, 258 f. 3d 636, 640 n. 3 (7th Cir. 2001) (Unincorporated organization provides its owners no shield against personal liability).  Kevin Lederer as the owner of Sprecher's Restaurant & Pub therefore is personally liable to the Plaintiffs for the failure to pay FLSA minimum wages.

        c.      <u>Sprecher's Restaurant & Pub and therefore Lederer is Liable to the Plaintiffs for Failure to Pay Minimum Wages under Wisconsin Law.</u>

A parent can be held liable when it directly participated in the subsidiary's unlawful acts, so that its own actions caused its subsidiary to violate the law.  *U.S. v. Best Foods*, 524 U.S. 51, 65 (1998); *Esmark Inc. v. NLRB*, 887 F. 2d at 756.  Wisconsin law has adopted this principle by holding that one entity can be held liable for a second entity's violations of the law when the first entity had the right to control the second entity's operations that caused the violations.  *Lang v. Lion's Club of Cudahy Wisconsin, Inc.*, 2020 WI 25 ¶30; 390 Wis. 2d 627.  *Kerl v. Rasmussen*, 2004 WI 86 ¶7, 273 Wis. 2d 106 (Franchisor liability depends on whether it controlled aspects of franchisee's operation that caused the Plaintiffs' injury).

Sprecher's Restaurant & Pub controlled the aspects of each restaurant's operation that caused the failure to pay minimum wages.  Sprecher Restaurant & Pub, not the individual restaurants, issued an employee handbook that stated its intent to use tips to satisfy a portion of the minimum wage owed to each and every tipped employee at each restaurant. The accountant who worked for all of the Sprecher's restaurants, not the individual restaurants, then decided to hire payroll companies who would then be responsible for making sure the restaurants complied with wage and hour laws. (Docket #40, pg. 8-9) The LLCs that operated the individual restaurants such as Watertown Sprecher, on the other hand, did not directly interact with the payroll companies. (Docket #39, pg. 42)  Sprecher's Restaurant & Pub, not the individual restaurants, was responsible through the payroll companies that it hired for deciding how to comply with Wisconsin wage and hour laws, including its requirement that an employer must maintain in its time and payroll records tip declarations signed by the tipped employee before it could pay the tipped employee a minimum wage of $2.33 rather than $7.25 per hour.

Sprecher's Restaurant & Pub therefore was responsible for both aspects of the individual restaurants' operation that caused the Wisconsin minimum wage violation:  The decision to claim a tip credit against minimum wages owed to its employees; and the decision to hire the payroll company who then failed to comply with Wisconsin regulations governing signed tip declarations. Sprecher's Restaurant & Pub therefore is liable for each restaurant's failure to pay the minimum wage to its tipped employees.  Lederer as the owner of Sprecher's Restaurant & Pub therefore is himself personally liable for all unpaid minimum wages.

7.      Conclusion.

For the above stated reasons, the Court should find as a matter of law that Watertown Sprecher violated the FLSA and Wisconsin wage laws in the manner described above, that

Watertown Sprecher is liable for FLSA liquidated damages; and that Kevin Lederer is personally liable for all FLSA and Wisconsin minimum wages that Watertown Sprecher owes to the Plaintiffs.

Dated this 15th day of April, 2021.

s/Yingtao Ho
YINGTAO HO
Wisconsin State Bar No. 1045418
The Previant Law Firm, s.c.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI   53203
Phone 414/271-4500
Fax 414/271-6308
yh@previant.com

Attorneys for Plaintiffs