IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RYEA BRUSKE &
TAMSYN BRUSKE,
on behalf of themselves and
all others similarly situated,

                           Plaintiffs,                    OPINION AND ORDER

      v.

                                                      19-cv-851-wmc

CAPITOL WATERTOWN SPRECHERS,
LLC; CAPITOL GENEVA, LLC;
CAPITOL DELTON, LLC; CAPITOL
GLENDALE, LLC; CAPITOL HOSPITALITY,
LLC; KEVIN LEDERER; & SUE GETGEN,

                           Defendants.

Both United States and Wisconsin labor laws require that employers (1) pay their employees a minimum wage for each hour of work and (2) pay an overtime premium for hours worked in excess of forty in a single work week. 29 U.S.C. §§ 206(a)(1)(C), 207(a); Wis. Stat. §§ 104.035(1)(a), 103.025(1)(c). However, these wage obligations may be offset by certain tips earned by a tipped employee, known as a "tip credit." 29 C.F.R. § 531.59; Wis. Stat. § 104.035(3). In this proposed collective and class action, named plaintiffs Ryea and Tamsyn Bruske allege that defendants improperly claimed a "tip credit" against their wages, and in doing so, failed to pay the full wages owed to them under federal and state law. Specifically, according to plaintiffs, defendants' offset was improper under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* because they neither informed their tipped employees that they would make up the difference if the employees' cash wage plus tips fell short of the minimum wage, nor did they inform the tipped

employees that the claimed credit would increase to account for the cost of additional employee uniforms.  Similarly, plaintiffs claim that defendants improperly claimed a tip credit under Wisconsin law because defendants did not obtain complete "tip declarations" from their tipped employees.  Finally, although the named plaintiffs were only employed by one of the five LLCs named in this suit, plaintiffs allege that all the LLC defendants are properly joined in this action as a "single employer."

Now before the court are various motions, including plaintiffs' motion for conditional certification of a collective action under the FLSA (dkt. #37) and defendants' motion for partial summary judgment on plaintiffs' state law claim (dkt. #50).  These motions are addressed in the opinion that follows.

BACKGROUND

**A. Facts Regarding the Parties and the Relationship Between the LLC Defendants**

The defendants presently named in this case are Capitol Watertown Sprechers, LLC; Capitol Geneva, LLC; Capitol Delton, LLC; Capitol Glendale, LLC; Capitol Hospitality, LLC; Kevin Lederer; and Sue Getgen.  Named plaintiffs Ryea Bruske and Tamsyn Bruske were employed to work as servers and bartenders at the Sprecher Pub & Restaurant located in Watertown, Wisconsin ("Watertown Sprechers"), which is owned by defendant Capitol Watertown Sprechers, LLC.[1]  The remaining four LLC defendants

---

[1] Although the original brewing company is known as Sprecher Brewing Company, the record contains various spellings of franchisee restaurants at issue, including "Sprecher," "Sprechers," "Sprecher's," and "Sprechers."  For ease of reference in this opinion, the court has adopted "Sprechers" when speaking of the pub & restaurant LLCs at issue here.

also operate as holding companies for various Sprechers Pub & Restaurants across Wisconsin.[2]

All of the five LLCs named in this suit are either solely- or majority-owned by the same four investors, one of whom is defendant Kevin Lederer.  (Lederer Dep. (dkt. #40) 4:22-5:12.)  Lederer explained that the LLCs would, from time to time, loan money between each other, and he would not set specific repayment deadlines or terms, although the goal would be for those loans to be repaid eventually.  (*Id.* at 38:19-25.)  When asked if one Sprechers LLC would sue another for repayment of these loans, Lederer responded, "I don't think you sue yourself too often, do you?"  (*Id.* at 39:1-5.)

In addition, defendant Sue Getgen served as the operations director for all of the Sprechers restaurants owned by the five LLCs, although she was technically an employee of and paid by Capitol Geneva, LLC.[3]  (Lederer Dep. (dkt. #40) 6:3-7:3.)  In her capacity as operations director, Getgen also oversaw the general managers at all of the Sprechers locations.  (*Id.*)  For example, Ryea explained that Getgen would sometimes come to the

---

[2] Apparently, there is one Sprechers Pub & Restaurant located in Sheboygan, Wisconsin, that operates under different ownership and is not implicated in this lawsuit.  Thus, while the court sometimes refers to "Sprechers restaurants" in this opinion, it is with the specific understanding that the "Sheboygan Sprechers" is not included.

[3] When asked about the source of Getgen's salary, Lederer explained:
>    [Lederer] I believe she's been paid out of [the Lake Geneva company] for many years, and then Abe the accountant would divide that equally, her package, between all the LLCs, but every LLC is entitled to pay in for her services.
>    [Attorney Ho] Did they in fact pay in?
>    [Lederer] No.  I was going to say a lot of these are probably still owed to us if I looked at our balance sheets.  So again, it might have been one or two of those over the years, but Madison was not a profitable site, Glendale was not, obviously Watertown was not, so if they did not have the ability to pay in, we simply did not get paid ourselves.

(Lederer Dep. (dkt. #40) 34:2-20.)

Watertown Sprechers and ask Ryea to make drinks that were on the Watertown menu so that Getgen could take pictures of them, then use those pictures in advertisements for all of the Sprechers Pub & Restaurant locations.  (Ryea Bruske Decl. (dkt. #41) ¶ 6.)[4]

Further, non-party Abe Richgels was the accountant for all five of the defendant LLCs, although he was formally employed through yet another separate LLC -- Capitol Real Estate Management, LLC.[5]  (Lederer Dep. (dkt. #40) 9:6-19.)  Richgels was given the authority by Lederer and Getgen to hire payroll companies, which were in turn relied on to ensure the five LLCs' compliance with state and federal laws, including wage and hour laws.  (*Id.* at 8:3-10:1.)  In particular, when plaintiffs Ryea and Tamsyn Bruske began working at Watertown Sprechers, they received a copy of a document titled "Sprecher's Restaurant & Pub Employee Handbook."  (Ho Decl., Exs. 4, 5 (dkts. #59-4, 59-5; Ryea

---

[4] Getgen was deposed as a 30(b)(6) witness for defendant Capitol Watertown Sprechers, LLC before the addition of the other four LLC defendants.  Still, in her deposition, she acknowledged having access to payroll data for all Sprechers restaurants, and being responsible for hiring and overseeing the general managers at all Sprechers locations, deciding the restaurant's daily hours, and discussing menu and pricing changes with the general managers.  Defendants now object that these facts are outside the scope of her testimony as a 30(b)(6) designee for just Capitol Watertown LLC.  This is a distinction without a difference, however, since:  (1) there appears no material dispute as to Getgen's role for all five LLCs; and (2) while not perhaps formally testifying as a 30(b)6 representative for Capital Watertown on some of these topics, Getgen was still under oath as to *her* role with respect to each LLC.

[5] When asked whether any of the restaurants reimburse Capitol Management, LLC for a portion of Richgels' services, Lederer responded:

> We would have liked that over the years, I'll be honest with you.  I believe -- I'd have to go back and look at the P&Ls.  That's the one thing I did review, you know, quarterly or annually is the P&Ls.  We showed I believe $1,500 per month charged to each restaurant for basically his services which would be accounts payable, accounts receivable, handling the payrolls, handling compliance, and any restaurant that was not making money was not paying him, so there might have been one or two out of all those restaurants that actually paid us back.

(Lederer Dep. (dkt. #40) 29:15-30:3.)

Bruske Decl., Ex. A ("Handbook") (dkt. #41-1).)  This Handbook was dated May 1, 2015, although the Watertown Sprechers location did not open until 2016.

## B.  Facts Regarding the Tip Credit and Uniform Expenses

Generally, the Bruskes were paid by Watertown Sprechers $2.33 per hour when they worked as servers and $7.00 per hour during the majority of the time they worked as bartenders.[6]  Payroll records from Watertown Sprechers from October 2017 through October 2019 show that the Bruskes' rate of pay was typical of other tipped employees. (*Id.*)  Specifically, with few exceptions, the records show that servers were paid $2.33 per hour, bartenders were paid $7.00 per hour, bussers were paid $4.25 per hour, and trainers were paid $6.00 per hour.  (*Id.*)

Watertown Sprechers also required employees to abide by a dress code. (Watertown Sprechers Dep. (dkt. #39) 69:16-22.)  Employees were required to wear a t-shirt with a Sprechers logo on it, although they could also wear a long-sleeve shirt underneath the t-shirt or a jacket with a Sprechers logo; in addition, employees were generally expected to be "clean."  (*Id.* at 71:4-73:7.)  Tipped employees were given one free t-shirt (and servers would also receive a free apron), but if they wanted additional clothing they would have to pay for it.  (*Id.* at 72:15-18.)  Both Ryea and Tamsyn Bruske testified that they purchased additional clothing from Watertown Sprechers, and the expense for that clothing was deducted from their paychecks.  (Ryea Bruske Dep. (dkt. #46) 95:7-25; Tamsyn Bruske Dep. (dkt. #47) 73:20-76:9.)

---

[6] There was also a period of time when Ryea received $8.00 per hour when working as a bartender. (Ho Decl., Ex. 1 (dkt. #42-1).)

5

As for what information was provided about their tip credit, Ryea represented that: (1) "[n]o one ever told me, either before or while I worked at the Watertown location, whether the amount of the tip credit that was being claimed was the difference between $7.25 per hour and my cash wage, or was a larger amount to account for the uniform deductions"; and (2) "[n]o one ever told me, either before or while I worked at the Watertown location, that I would receive additional cash to make up the difference if my cash wage plus tips fel[l] short of the minimum wage of $7.25 per hour." (Ryea Bruske Decl. (dkt. #41) ¶¶ 11-12.) In fact, when asked in her deposition if she understood that whenever her wage plus tips did not equal the minimum wage, the restaurant must make up the difference, Ryea responded: "I was told by the management of the restaurant team that they don't do that at Sprecher[]s." (Ryea Bruske Dep. (dkt. #46) 24:12-17.) Similarly, Tamsyn testified that although told to expect payments in the form of a cash wage plus tips, she did not have any discussion with anyone at the Watertown Sprechers about tip credit, nor was she informed that if her tips plus cash wage ever fell below the minimum wage, Watertown Sprechers would pay the difference. (Tamsyn Bruske Dep. (dkt. #47) 73:20-76:9, 37:18-23.)

At the same time, both Ryea and Tamsyn conceded that they did not have any personal knowledge about what other employees at other Sprechers restaurants, including the Watertown Sprechers, were told about the tip credit. (Ryea Bruske Dep. (dkt. #46) 148:1-13; Tamsyn Bruske Dep. (dkt. #47) 112:16-25.) Still, in response to plaintiffs' interrogatory asking Watertown Sprechers to "[i]dentify all differences between the explanation of the Tip Credit that you provided to the Named Plaintiffs, and the

explanation of the Tip Credit that you provided to any other of your Tipped Employees during the time period of October 10, 2016 to the present," Watertown Sprechers responded: "There are no differences.   All tipped employees, including the [named] Plaintiffs, are informed as to the hourly wage they will be paid. . . .  Tipped employees are informed that Sprechers applies tips earned toward the current minimum wage.  They are [also] informed that the current minimum wage is $7.25/hour."  (Ho Decl., Ex. 2 (Def. Watertown Sprechers' Resp. to Pls.' Discovery Requests) (dkt. #42-2) 2.)  Through its 30(b)6 designee, Sue Getgen, Watertown Sprechers similarly confirmed that, when an employee is hired, they are told that there is a tip credit calculated, and the amount of the tip credit is the difference between what they are paid and the minimum wage. (Watertown Sprechers Dep. (dkt. #45-3) 55:4-14, 56:5-21.)

However, the only provision in the Sprechers Restaurant & Pub Employee Handbook that discusses the tip credit states that:  "When permitted by law, we apply tips earned by tipped employees towards a percentage of the current minimum wage requirement."  (Ryea Bruske Decl., Ex. A ("Handbook") (dkt. #41-1) 2.)  Additionally, posters from the Wisconsin Department of Workforce Development ("DWD") containing information about the tip credit were apparently sent to Watertown Sprechers by an outside payroll company, but the record does *not* show what information was provided in those posters.  (Watertown Sprechers Dep. (dkt. #39) 65:24-66:8.)

Tipped employees at the Watertown Sprechers, including the Bruskes, used a Point of Service ("POS") system, through which they would (1) punch in under their own name when they reported to work, (2) take a customer's drink/food order, (3) manually report

their cash tips, and (4) punch out at the end of their shift.[7]   Tipped employees were given a prompt to enter their cash tips before checking out of the POS system.   To enter cash tips into the system, the tipped employee would take the following steps: (1) go to the "Shift Review Screen"; (2) go to the "Declare Tips Screen"; (3) enter the amount of tips received during the shift on a computer screen; (4) go to the close shift screen; and (5) print the report.   The employee is not expressly asked to acknowledge the accuracy of the tips that he or she is entering.   Additionally, paychecks with a paystub attached were provided to each tipped employee at Watertown Sprechers.   These paystubs reflected the employees' hourly cash wages and tips, as well as the amount withheld for taxes and social security.   There is no dispute that this same process was also used by tipped employees to enter tips at the Sprecher's Pubs and Restaurants located in Lake Geneva, Wisconsin, although there is no specific evidence of its use at other locations.

In a declaration produced in this case, the *former* director of the Wisconsin DWD's Labor Standards Bureau, James Chiolino, affirms that: (1) the DWD is responsible for enforcing Wisconsin's tip declaration requirements; (2) an employer using a POS that requires tipped employees to enter their tips into the system at the end of each shift, then provides them with paystubs that reflect the proper taxes taken out, is in compliance with Wisconsin law; and (3) claims for violations of the tip declaration recordkeeping requirement can only be pursued by the DWD.   (Chiolino Decl. (dkt. #53) ¶¶ 3-6.)   In a supplemental declaration, Chiolino clarifies that "it has been the position of the DWD since I began working for them that use of a POS system satisfies the tip declaration

---

[7] The POS system automatically recorded credit card tips.

requirement set forth in DWD § 272.03(2)."  (Chiolino Supp. Decl. (dkt. #61) ¶ 7.)[8]

OPINION

## I.  Overview of Relevant Law

As discussed above, in specific circumstances, both federal and Wisconsin law permit employers to offset their minimum wage and overtime wage obligations by claiming a "tip credit."  29 C.F.R. § 531.59; Wis. Stat. § 104.035(3). In addition, under the FLSA, employers claiming a tip credit are required to have "informed" affected employees.  29 U.S.C. § 203(m)(2)(A).  In *Schaefer v. Walker Bros. Enterprises*, 829 F.3d 551 (7th Cir. 2016), the Seventh Circuit held that the "statutory *minimum*" information that an employer *must* convey is that:  (1) "in anticipation of tips the employer will pay less than the minimum wage"; (2) "how much the cash wage will fall short of the current minimum wage"; and (3) "if tips plus the cash wage do not at least match the current minimum wage, the employer must make up the difference."  *Id.* at 556-57 (emphasis added).  After the relevant events in *Schaefer*, the Department of Labor further issued a regulation requiring that two additional pieces of information be communicated: (1) "all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips" and (2) "that the tip credit shall not apply to any employee who has not been informed of the requirements in

---

[8] To the extent that any of Chiolino's representations constitute legal opinions -- as would appear to be the case with respect to some, if not all, of his representations -- the court rejects them.

this section."  29 C.F.R. § 531.59 (2011).[9]  If an employer does not provide this information in advance of its use of the tip credit, it is not eligible to take the credit.  *Id.*

Wisconsin law does not appear to have a similar notice requirement, but it does require employers to have a signed "tip declaration" to claim a tip credit:

> When the employer elects to take tip credit the employer must have a tip declaration signed by the tipped employee each pay period and show on the payroll records that any required social security or taxes have been withheld each pay period to show that when adding the tips received to the wages paid by the employer, no less than the minimum rate was received by the employee.  When the employer's time and payroll records do not contain these requirements, no tip credit shall be allowed.

Wis. Admin. Code DWD § 272.03(2)(b)(1).

Finally, federal regulations provide that job-related expenses incurred primarily for the benefit of the employer, such as tools or uniforms, cannot be charged to the employee if the expenses would drive the employee's pay below minimum wage.  29 C.F.R. § 531.35 (2011).

## II. Conditional Certification

The FLSA provides that an employee may bring an action on behalf of himself and "other employees similarly situated."  29 U.S.C. § 216(b).  Before a plaintiff can litigate on behalf of any other employee, however, they must "consent in writing" and that consent must be filed with the court.  *Id.*  Because of this "opt in" requirement, courts engage in a

---

[9] Beginning April 30, 2021, an additional revision to this regulation became effective.  *See* 29 C.F.R. § 531.59 (2021).  The relevant events in this lawsuit, however, took place between 2016 and 2019, and so the court applies the regulation that was effective from May 5, 2011, through April 29, 2021.

two-step process to certify FLSA collective actions. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014).

At the first step, the court determines whether to authorize notice to allegedly similarly situated employees. *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). To meet its burden, a plaintiff need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). If this burden is satisfied, then the court conditionally certifies a collective action and authorizes notice to potential collective members. *Id.* At the second step, a defendant may move the court for decertification of the conditional collective, at which point "the court determines whether the plaintiffs are in fact similarly situated to those who have opted in." *Id.* (quoting *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009)).

Here, plaintiffs seek to conditional certification of the following collective:

> All tipped employees employed at Sprecher's Restaurant &
> Pub locations at Watertown, Wisconsin Dells, Lake Geneva,
> Glendale, and Madison, Wisconsin during the time period on
> or after October 10, 2016; or employed at Fast Lanes Pub at
> Columbus, Wisconsin on or after January 22, 2017.

(Dkt. #37.) Plaintiffs seek certification only as to their FLSA claim that defendants were not entitled to take the tip credit because they provided insufficient notice to tipped employees.

The court will initially consider whether conditional certification for the tipped employees at the Watertown Sprechers is appropriate, and then consider whether this

11

certification should be extended to the other restaurant locations.  At the outset, the court notes that plaintiffs have produced practically *no* evidence related to the Fast Lanes Pub in Columbus, and so the court will deny plaintiffs' request to extend the conditional collective to employees at that restaurant.

As discussed above, however, the record suggests that Watertown Sprechers did not provide all of the required information to take tip credit.  In particular, both Ryea and Tamsyn Bruske testified that they were never told that Watertown Sprechers would make up the difference if their cash wage plus tips did not meet the minimum wage.  Even Watertown Sprechers' *own* description of its tip-credit notification policy fails to mention that:  the employer will make up the difference if the employee's cash wage plus tips do not at least match the minimum wage; all tips received by the tipped employee must be retained by the employee; or the tip credit does not apply to any employee who has not been informed of these requirements.

This evidence meets the required "modest factual showing" that all tipped employees at Watertown Sprechers may well have been victims of a common unlawful policy.  As defendants point out, named plaintiffs Ryea and Tamsyn Bruske only worked as servers and bartenders, while the proposed collective includes all tipped employees, but "[p]laintiffs do not have to show that the potential class members have identical positions for conditional certification to be granted," *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 848-49 (N.D. Ill. 2008), and Watertown Sprechers' apparently deficient, tip credit notification policy would appear to apply to all tipped employees.

Additionally, plaintiffs argue that Watertown Sprechers' notices were deficient

12

because of expenses incurred by tipped employees for extra uniforms.  This claim appears to be premised on defendant's failure to "inform[] its tipped employees *in advance* of the . . . *amount* by which the wages of the tipped employee are increased on account of the tip credit."  29 C.F.R. § 531.59(b) (emphasis added).  From plaintiffs' limited discussion of this issue, they appear to argue that at least during weeks in which tipped employees incurred expenses for additional uniforms, defendants increased their claimed tip credit without informing tipped employees in advance.  However, there is no evidence that Watertown Sprechers specifically or all defendants generally ever *did* increase the amount of tip credit claimed.[10]  Moreover, conditional certification would not be appropriate as the proposed collective is not similarly situated:  plaintiffs' proposed collective includes *all* tipped employees, while only those tipped employees who bought additional uniforms would actually have to be properly informed in advance of the amount of the claimed tip credit, even under plaintiffs' theory.

The last issue to be addressed is whether the proposed collective should extend to employees beyond those at Watertown Sprechers.  Plaintiffs argue that the five LLC defendants named in this case are actually a single, integrated enterprise, and the tipped employees at each of the defendants should be included in the FLSA collective.  In a previous order, this court concluded that the single employer doctrine, which provides that

---

[10] Indeed, case law suggests that defendants are not permitted to do so.  *See Rechtoris v. Dough Mgmt., Inc.*, No. 3:18CV708-PPS/MGG, 2019 WL 1515229, at *3 (N.D. Ind. Apr. 5, 2019) ("[E]mployers cannot be allowed to retroactively increase or decrease the tip credit amount that counts towards their minimum wage compliance."); *Meetz v. Wis. Hosp. Grp. LLC*, No. 16-C-1313, 2017 WL 3736776, at *5 (E.D. Wis. Aug. 29, 2017) (same).

a group of distinct but closely affiliated entities may be treated as a single employer in an FLSA collective action.  (Op. & Order, 5/26/2021 (dkt. #84) 7.)  Under this standard, courts must consider:  (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 788 (7th Cir. 1993).

At least at the conditional certification stage, plaintiffs have done enough to show that the five Sprechers LLCs are properly treated as a single employer.  As an initial matter, the same four investors were either the sole or majority-owners of all five LLCs, and the same small group of individuals -- defendants Lederer and Getgen, as well as the same accountant, Richgels -- managed the LLCs.  More specifically, there appears no dispute that the authority to ensure compliance with state and federal laws, including wage and hour laws, rested with accountant Richgels for all five entities.  Moreover, the same employee handbook appears to have been distributed to employees at all five Sprechers locations.  Finally, Lederer testified that the LLCs would loan money to each other on loose terms without the expectation of actions such as lawsuits to enforce repayment, and although Getgen and Richgels both engaged in work for all of the LLCs, they were only formally paid by Capitol Geneva, LLC and Capitol Real Estate Management, LLC, respectively.

At this preliminary stage, these facts are enough to suggest the five defendant entities had interrelated operations, centralized control of labor relations, common management, and common ownership. *See Taveras v. D & J Real Est. Mgmt. II, LLC*, 324

F.R.D. 39, 41 (S.D.N.Y. 2018) (conditionally certifying FLSA collective where plaintiff "proffered sufficient facts to support their allegation that the three named Defendants may have operated as a single integrated enterprise" although noting that the court will have to determine "[a]t a later stage" whether defendants were "in fact" a single integrated enterprise); *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (conditionally certifying FLSA collective where plaintiff produced sufficient evidence to "permit an inference that unlawful pay policies implemented" at one location extended to two other locations because they were "run as an integrated enterprise").

### III. Notice

Having conditionally certified a collective action, the court must address the proposed notice to be sent to the collective and a proposed opt-in form. Unable to agree, the parties have provided the court with competing proposals, each contending that theirs is better. As masters of their case, the court will work off of plaintiffs' proposals, but defendants' suggestions have been considered. The following changes are to be made to plaintiffs' proposal:

a. Per plaintiffs' acquiescence to the change, the words "in Suit for Violations of Fair Labor Standards Act" is to be omitted in the title of the opt-in form,. (*See* Pls.' Reply (dkt. #48) 16.)

b. The first paragraph of the notice form should read: "All tipped employees employed at Sprechers Restaurant & Pub locations at Watertown, Wisconsin Dells, Lake Geneva, Glendale, and Madison, Wisconsin, during the time period on or after August 23, 2018."

15

c.  The second paragraph should likewise read:  ". . . while working at Sprecher's Restaurant and Pubs located at Watertown, Wisconsin Dells, Lake Geneva, Glendale, and Madison, Wisconsin, on or after August 23, 2018."  Although the parties dispute whether the appropriate statute of limitations is two or three years, it is premature to decide that issue.  Thus, consistent with its practice, the court has set the time frame for three years from the date of this order.  *Bessy v. Per Mar Sec. & Rsch. Corp.*, No. 17-CV-034-WMC, 2018 WL 1583297, at *5 (W.D. Wis. Mar. 30, 2018).  Regardless, plaintiff's individual, opt-in claims will cover the two- or three-year period preceding his or her specific, respective opt-in date.  *See* 29 U.S.C. § 256(b) (providing that commencement of action for opt-in plaintiffs is the "date on which such written consent is filed in the court in which the action was commenced").

d.  The fourth paragraph of the notice, which mentions Richgels and Fast Lanes Pub should be omitted, as the court did not permit plaintiffs to name Richgels as a defendant in the first place and has now ruled employees of Fast Lane Pub are not part of the collective.

e.  The fifth paragraph of the notice should be amended to read:

> You are invited to join a single claim advanced in the complaint:  The Plaintiffs contend the Defendants were not permitted to count any of the tips you received toward the minimum wage owed to you because the Defendants failed to tell you that they would make up the different if your cash wage plus tips fell short of the minimum wage.  Therefore, plaintiffs contend you were entitled to $7.25 per hour plus tips for each hour you worked within the first 40 hours of each work week, and $10.875 per hour plus tips for each hour you worked after the first 40 hours of that week.  Specifically,

16

plaintiffs contend you are entitled to recover all minimum and overtime wages owed to you under this formula, plus an equal amount as liquidated damages.

f. The following paragraph (taken from defendants' proposal) should be added after the fifth paragraph:

The Defendants deny any and all liability and further deny that they failed to notify Plaintiffs or their other employees about the tip credit, and Defendants contend that they have complied with all wage laws pertaining to your employment. The Defendants further deny that they owe any additional sums of money to any employees for minimum wage or overtime compensation, and deny that they are liable for any amount as liquidated damages. Defendants Kevin Lederer and Sue Getgen also deny that they, as individuals, were the employers of any of Sprecher's Restaurant and Pub employees.

g. In the seventh paragraph, under the heading "your right to participate in this suit," currently with a date of "October 10, 2016," should be changed to "August 23, 2018" and any mention of Fast Lanes should be omitted.

h. The beginning of the eleventh paragraph should be amended as follows in bold: **"If you choose to join this lawsuit, it is also important that you return the Consent Form as early as possible . . . ."** Similarly, the beginning of the thirteenth paragraph should be amended as follows without bolding: "If you choose to join this lawsuit, you will be eligible . . . ."

i. Finally, the court agrees with defendants that some notice should be given that individuals who opt-in may be subject to discovery obligations, although a more neutral explanation is appropriate. *See Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 520 (E.D.N.Y. 2011) ("[T]he notice of pendency should include a neutral and non-technical reference to discovery obligations, to insure that opt-in

17

plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions.") (internal quotations omitted). Accordingly, after the second sentence of paragraph thirteen, the following language should be included:   "Additionally, you may be asked to give testimony and information about your work for defendants to help the Court decide whether you are owed any money."

Provided that these changes are made, the notice and opt-in are approved.

## IV. Motion for Partial Summary Judgment

The second motion before the court is defendants' motion for partial summary judgment.  Before addressing the merits of defendants' motion, however, the court must first take up two related issues.  The first concerns plaintiffs' motion for leave to file an untimely response to the partial summary judgment motion.  (Dkt. #57.)  While plaintiffs filed their opposition brief one business day after the court's deadline, plaintiffs' counsel represents this was due to an inadvertent error.  (Dkt. #57.)  Since this minor delay is excusable, the court will grant plaintiffs' motion for leave to file.  Fed. R. Civ. P. 6(b)(2) (an untimely extension request may be granted if "the failure to act was the result of excusable neglect").

The second concerns plaintiffs' motion to strike the supplemental declaration of James Chiolino.  (Dkt. #63.)  In his initial, unchallenged declaration, Chiolino purports to affirm in part that an employer using a POS that requires tipped employees to enter their tips into the system at the end of each shift, then provides them with paystubs that reflect the proper taxes taken out, is in compliance with Wisconsin law.  (Chiolino Decl. (dkt.

#53) ¶¶ 3-6.)  In his supplemental declaration filed along with defendants' reply in support of their motion for partial summary judgment, however, Chiolino clarifies that "*it has been the position of the DWD* since I began working for them that use of a POS system satisfies the tip declaration requirement set forth in DWD § 272.03(2)."  (Chiolino Supp. Decl. (dkt. #61) ¶ 7 (emphasis added).)  Although arguments raised the first time in a reply brief are waived, *United States v. Hughes*, 970 F.2d 227, 235 n.6 (7th Cir. 1992), "[t]here is no blanket prohibition from filing additional affidavits when a movant for summary judgment files a reply brief following a nonmovant's response," *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 318 (7th Cir. 2003).  Here, the supplemental declaration did not raise any new issues, and only clarified that a statement made by Chiolino reflected not just his personal opinion, but the past position of the DWD.  Regardless, plaintiffs have taken the opportunity to respond substantively to the new declaration in their motion to strike, arguments which the court has considered.  For all these reasons, plaintiffs' motion to strike will be denied.

Turning now to defendants' summary judgment motion, the question for the court is whether there are any disputes of material fact and defendants as the moving party are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Here, defendants seek summary judgment as to plaintiffs' state law claim that defendants were not entitled to claim a tip credit because they did not require tipped employees to sign tip declarations for each pay period.  According to defendants, this record-keeping requirement is not actionable, and even if it were, the undisputed facts show that their POS system *did* meet Wisconsin's tip declaration requirement.  Defendants also argue that Wisconsin law does

not recognize a private right of action for an employer's failure to keep adequate records, including tip declarations.  In response, plaintiffs contend that the legal basis for their claim is found at Wis. Stat. § 109.03(05), which expressly authorizes a private action for back wages, rather than in DWD § 272.03(2)(b)(1).

This issue was recently considered by the District Court for the Eastern District of Wisconsin in *Hussein v. Jun-Yan, LLC*, 502 F. Supp. 3d 1366 (E.D. Wis. 2020).  In that case, the district court held that a plaintiff could maintain an action for back wages under Wis. Stat. § 109.03(5) based on an alleged failure to provide tip declarations, explaining that:

> Wisconsin courts have allowed plaintiffs to pursue back wages (as Plaintiffs do here) for alleged violations of other comparable DWD regulations. *See, e.g.*, *German v. Wisconsin Dep't of Transp., Div. of State Patrol*, 2000 WI 62, ¶ 10, 235 Wis.2d 576, 612 N.W.2d 50 (§ 109.03(5) and DWD rule requiring employers to pay employees for on-duty meal periods combined to "create a system to assure that each employee is compensated for his or her labor."); *O'Brien v. Travelers Inn, LLC*, 2019 WI App 21, ¶ 15, 386 Wis.2d 630, 927 N.W.2d 933 (unpublished disposition) (employer did not meet minimum wage requirement when violating board and lodging deduction rules under DWD § 272.03(3)).  Defendants have not demonstrated nor can I identify any reason why this regulation should be treated differently than those in the cases listed above.

*Id.* at 1371-72.  This reasoning is persuasive, and this court likewise concludes that a plaintiff may pursue an action for back wages on the grounds that the employer did not provide tip declarations as required by DWD § 272.03(2)(b)(1).

Defendants next argue that even if a private cause of action may be maintained, plaintiffs' claim should be dismissed because defendants complied with the tip declaration

requirement. Specifically, while conceding they "did not have their employee sign a tip declaration for each pay period," defendants point out that they used a POS system to collect employee tip information, and further that they provided their tipped employees with paychecks reflecting the appropriate taxes taken out. (Defs.' Br. (dkt. #51) 5.)

Plaintiffs offer three responses to defendants' arguments: (1) "entering tips into a computer system on a daily basis does not satisfy the statutory requirement that the employee must have *a* signed tip declaration for each *pay period*"; (2) "merely entering one's tips into the Point of Sales system does not constitute signing or authenticating the accuracy of the tips being entered/declared"; and (3) "merely maintaining some record of the amount of tips received by the Plaintiffs during each shift does not constitute maintaining records of the amounts of tips the employees declared, let alone maintaining records of the employees' signing/authentication of the amount of tips they declared." (Pls.' Opp'n (dkt. #57-1) 1-2.)

The court begins with the language of the rule itself, considered in the context. *See State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (holding that "statutory language is interpreted in the context in which it is used"). As noted by the parties, the tip declaration rule at issue is located under the DWD rule for "minimum [wage] rates," under the "tips" subsection, and further under the heading "Burden of proof," which contains two rules:

> 1. When the employer elects to take tip credit the employer must have a tip declaration signed by the tipped employee each pay period and show on the payroll records that any required social security or taxes have been withheld each pay period to show that when adding the tips received to the wages paid by the employer, no less than the minimum rate was received by

21

> the employee. When the employer's time and payroll records do not contain these requirements, no tip credit shall be allowed.
> 2. The department may refuse to take action to collect minimum wage deficiencies for a tipped employee who has refused or failed to file an accurate signed tip declaration for the employer each pay period.

DWD § 272.03(2)(b).

Considering the plain language of the rule, as well as the surrounding context, the purpose of the tip declaration requirement primarily appears to be ensuring an accurate and recorded accounting of tips received by tipped employees. While the initial burden is on the *employer* to request signed declarations of tips from the employee in order for the employer to be able to take the tip credit, if the *employee* refuses or fails to accurately declare their tips, the DWD may refuse to take action to collect any minimum wage deficiencies. Separately, the employer is also required to record accurately the declared tips, wages, and deductions on payroll records to show that the employee has received at least the minimum wage.

Here, the court concludes that defendants' POS system meets this tip declaration requirement. Contrary to plaintiffs' argument, this system is not problematic in requiring employees to declare their tips at the end of every shift, rather than every pay period as contemplated by the rule. In particular, defendants' method promotes accuracy and still results in "a" declaration every pay period. Nor does the court find the POS system to be faulty under Wisconsin law because an employee is not expressly asked to affirm the accuracy of the tips entered. Subsection 3(2)(b) contains no such requirement, and the only reasonable interpretation of a requirement to enter tips is that it is a requirement to

22

enter *accurate* tips.  Finally, the POS system produces a signed tip declaration.  Under Wisconsin law, "[i]f a law requires a signature, an electronic signature satisfies that requirement in that law," Wis. Stat. § 137.15(4), and "electronic signature" is defined as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."  Wis. Stat. § 137.11(8).  Here, employees must enter their tips while signed into the POS system under their own name.[11]

Considering the law and undisputed facts as a whole, the court agrees that defendants' POS system meets the requirements of Wisconsin's tip declaration rule.  Accordingly, the court will grant defendants' motion for partial summary judgment as to plaintiffs' state law claims.  This necessarily means that the court must also deny plaintiffs' Rule 23 motion to certify a class premised on this claim.

---

[11] As a side note, on April 23, 2021, the Wisconsin Legislature added new language to Wis. Stat. § 104.045(1), which clarifies the signature requirement.  Wis. Act 26 (Apr. 24, 2021).  The statute now provides that an employer may "require a tipped employee to use an electronic signature *or other electronic means that uniquely identifies the employee* to acknowledge the counting of tips or similar gratuities for purposes of § 104.035(3)."  Wis. Stat. § 104.045(1) (emphasis added).  Of course, this statute predates the relevant issues in this case, and so, does not control, but at least by enacting this law, the court agrees with defendant that the Wisconsin Legislature "essentially acknowledged and now codified in the Wisconsin Statutes the position that the DWD has taken for years."  (Defs.' Supp. (dkt. #82) 1.)  Although the court gives the opinion of a former commissioner little weight, this conclusion is also supported by Chiolino's representation that it is and has been the position of the DWD that the use of a POS system like the one employed by defendants satisfies Wisconsin's tip declaration requirement.  Although the Wisconsin Supreme Court has declared that it no longer gives "great weight" deference to agency interpretations of statutes, "due weight" is still given to "the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it."  *Tetra Tech EC, Inc. v. Wis. Dep't of Revenue*, 2018 WI 75, ¶¶ 74, 77-78, 382 Wis. 2d 496, 914 N.W.2d 21.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for conditional certification of an FLSA class (dkt. #37) is GRANTED IN PART and DENIED IN PART as follows:

   a.  The court certifies the following collective action:

       All tipped employees employed at Sprechers Restaurant & Pub locations at Watertown, Wisconsin Dells, Lake Geneva, Glendale, and Madison, Wisconsin during the time period on or after August 23, 2018."

   b.  On or before September 2, 2021, defendants shall produce to plaintiffs an electronic list of names and addresses of all employees who fall within the scope of the collective action.

   c.  On or before September 7, 2021, plaintiffs' counsel is directed to mail the notices to the collective action members.  Those members will have 60 days from the date of mailing to opt-in to the collective actions.

2) Plaintiffs' motion for leave to file a late brief in opposition to defendants' partial motion for summary judgment (dkt. #57) is GRANTED.

3) Defendants' motion for partial summary judgment (dkt. #50) is GRANTED.

4) Plaintiffs' motion to strike (dkt. #63) is DENIED.

5) Plaintiffs' motion to certify a Rule 23 class (dkt. #65) is DENIED.

Entered this 23rd day of August, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge